FILED
November 02, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002193942

MICHAEL P. DACQUISTO, ESQ.
State Bar Number 84894
1901 Court Street
Redding, California 96001

Telephone: (530) 244-6007
Fax: (530)-244-0907

Attorney for John Reger, Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | NO. 09-42219-B-7 |
| ROSENAU INVESTMENTS, INC. | DCN: MPD-3 |
| Debtor / | Date: November 17, 2009<br>Time: 9:32 a.m.<br>Place: Courtroom 33, Dept B<br>501 I Street, 6th Floor<br>Sacramento, CA 95814 |

**TRUSTEE'S MOTION FOR AUTHORIZATION TO OPERATE THE DEBTOR'S BUSINESS DESCRIBED AS A 32 UNIT BOUTIQUE HOTEL KNOWN AS THE PEPPER TREE INN IN PALM SPRINGS, CALIFORNIA FOR A LIMITED PERIOD OF TIME, SIX MONTHS, PENDING CONSUMATION OF A SALE OF THE BUSINESS**

John Reger (hereafter "Reger"), the chapter 7 trustee in this case, submits the following for the court's consideration in connection with his emergency motion for authorization to operate the debtor's business described as a 32 unit boutique hotel known as The Pepper Tree Inn (hereafter PTI) in Palm Springs, California for a limited period of time, six months, pending consummation of a sale of the business.

## I. STATEMENT OF FACTS

These proceedings were instituted when the debtor Rosenau Investments, Inc. filed a skeleton petition under Chapter 7 of the United States Bankruptcy Code on October 13,

2009. Reger was appointed the Chapter 7 trustee.

Reger was contacted by the debtor's first counsel Dennis Cowan (hereafter Cowan) on or about October 14, 2009 and advised of the filing. He attended a meeting on October 16, 2009 with Cowan, the debtor's representative, Robert Rosenau, Sr. (hereafter RR) and Fredrick Clement (hereafter Clement). At that meeting Reger was given a general description of the debtor's business. He was provided a list from RR which set forth promissory notes and real property owned by the debtor and was also provided with general information on the status of these notes and properties.

Reger was told that almost all of the real property owned by the debtor and almost all of the promissory notes owned by the debtor were in default or non performing. He was advised the total amount of investor funds in the debtor was in the range of 25,000,000.00. He was not given a total figure estimating how much money would be recovered if all of the property was sold and all of the notes were paid off, but estimates, based on the figures provided to him, a shortfall of at least seventy five percent of the total amount invested.

Reger was told the only asset owned by the debtor that could be sold for any substantial sum was the PTI. He was advised the PTI is free and clear of any deeds of trust or judgments, that the PTI generated money (had made 100,000.00 in the past year) and that the PTI was the only asset owned by the debtor that was generating any income.

At that meeting Reger was advised that Cowan filed this case as a skeleton chapter 7 to give time to locate counsel who would ask to convert the case to chapter 11. This conversion would then allow RR to continue operating the PTI. Reger was told the PTI had previously been listed for sale, several years ago, at a price in the 5,000,000.00 range and then again a year or two ago at a price in the 3,500,000.00 range. Neither listing had brought about a sale.

Reger advised RR and Cowan that he would wait until October 21, 2009 to see if RR could come up with a 50,000.00 retainer which he believed was needed to retain counsel to substitute in for Cowan and who would then move to convert to chapter 11. Reger did this so he could investigate the matter further and reach his own conclusion as to whether a

conversion would be in the best interests of creditors. On October 22, 2009 Reger was advised that the debtor had retained Clement as its new counsel. A substitution of attorney was filed with this court on October 26, 2009. An order approving the substitution was filed on October 30, 2009.

After the meeting on October 16, 2009 Reger further investigated this matter. Information he obtained shows the California Department of Corporations issued a Desist and Refrain Order against the debtor, RR, Donna M. Rosenau (hereafter DR) the wife of RR, and Robert E. Rosenau (hereafter RR2) the son of RR for violating California Corporations Code §§25110 and 25401. These statutes govern qualification and sale of issuer securities and the requirement that information provided in connection with sale of these securities be truthful, accurate and not misleading. A true and correct copy of this order was filed with this court as Exhibit A to Reger's opposition to the debtor's ex parte motion to convert the case from chapter 7 to chapter 11.

Reger learned that the Securities and Exchange Commission has an open investigation and the Federal Bureau of Investigation has an open criminal investigation of the debtor and RR at this time.

Reger spoke with the former accountant for the debtor and with numerous investors in the debtor. It appears the debtor was a hard money lender who used investor funds (a) to purchase distressed properties and (b) to lend out to third parties who signed notes and deeds of trust in favor of the debtor. It also appears the debtor obtained money from new investors during the past year or two and then used that money to pay its existing investors, instead of purchasing new property or assets.

On October 22, 2009 Reger spoke with Steve Rizzo, the manager of the PTI. He told Rizzo who he was and briefly discussed this matter with him. Reger told Rizzo the property was in bankruptcy and that there were things he needed to discuss with Rizzo. Rizzo told Reger there was a customer present and that he would call back right away. He did not return the call.

On October 27, 2009 Reger called Rizzo again and asked why his call was not

returned. Rizzo told Reger he had been instructed by RR not to call him back and to refer any inquiries regarding this matter to RR.

On October 28, 2009 Reger traveled to Palm Springs. On October 29, 2009 he met with Allen Miller (hereafter AM), the real estate agent who had been involved in efforts to sell the PTI since 2005 and had a general discussion with him about the PTI and the best way to get it sold. Based on that conversation Reger signed a listing agreement with AM's firm to market and sell the PTI. AM advised Reger the high season and peak season for the PTI were just starting and that the PTI should remain open while it was being marketed. AM told Reger that if the PTI shut its doors that would have a dramatic effect on the price he could obtain through a sale.

On October 29, 2009 Reger met with Steve Rizzo (hereafter Rizzo), the on site manager of the PTI and discussed the overall operation of the PTI. As a result of that conversation and Reger's prior meeting with RR the following information is provided with respect to the operation of the PTI.

A. Taxes: Reger was led to believe at the meeting with RR that all tax obligations to the IRS, FTB, SBOE and EDD are current. He is investigating to confirm this. Ongoing tax obligations will be paid during operation of the PTI, if this motion is approved by the court.

B. Insurance: Reger was led to believe at the meeting with RR that the debtor has current liability insurance and worker's compensation insurance polices and that all insurance payments are current. He is investigating to confirm this. Insurance coverage will be continued during operation of the PTI, if this motion is approved by the court.

C. Employees: Reger was advised by Rizzo the debtor has approximately 7 to 10 employees, excluding RR. These employees are paid directly by the debtor through an account at Wells Fargo Bank. Reger was led to believe at the meeting with RR that all payroll tax obligations are current. He is investigating to confirm this. Ongoing payment to employees will be paid during operation of the PTI, if this motion is approved by the court. Reger has authorized payments to employees of the PTI, excluding RR, from the date of filing through the present time, from one of the debtor's bank accounts at Wells Fargo Bank

(hereafter WFB) to keep the PTI open pending this court's ruling on this motion.

D. Vendors: Rizzo informed Reger the vendors are paid on an as needed basis. Ongoing payments to vendors will be paid during operation of the PTI, if this motion is approved by the court.

E. Accounts Receivable: Rizzo informed Reger there are no outstanding accounts receivable. Rizzo stated that 99.9% of the time customers staying at the PTI pay by credit card. Checks are not accepted and cash payment is rare.

F. Banking: Reger has requested the debtor's bank accounts information and its most up to date accounting records. They have not yet been provided. Two bank accounts at WFB were frozen when the petition was filed and Reger has access to those funds.

G. Personal Property: Reger understands the debtor owns one vehicle. He has requested a list of personal property located at PTI. It has not yet been provided.

Based on Reger's investigation thus far, his knowledge at this time and the facts set forth above and in his declaration filed herewith it appears to be in the best interests of the bankruptcy estate and the numerous creditors to have Reger continue operating the PTI for six months to allow an orderly sale to occur. Reger would plan on using Rizzo as the on site manager and keeping the current employees. Collection of funds would continue as currently handled. Payment of bills and employees would be done only after Reger's authorization. All money collected and all money paid out would only be done through accounts handled by Reger with nobody else authorized to sign on them.

Discussions about this matter with the United States Trustee's office have verified they have no objection to Reger's request to operate the PTI in a chapter 7 proceeding so that it can be marketed and sold in a way designed to obtain the best possible return to creditors.

## II. MEMORANDUM OF POINTS AND AUTHORITIES

**A. THIS COURT HAS AUTHORITY TO AUTHORIZE REGER TO OPERATE THE DEBTOR'S BUSINESS FOR A LIMITED PERIOD OF TIME IF OPERATION OF THE BUSINESS IS IN THE BEST INTEREST OF THE ESTATE AND IS CONSISTENT WITH**

THE ORDERLY LIQUIDATION OF THE ESTATE.

Title 11 U.S.C. §721:

> "The court may authorize the trustee to operate the business of the debtor for a limited period, if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate." 11 U.S.C. §721

The legislative history of this statute provides an example of operating a business involving a watch company that converts watch movements and cases into completed watches. In that case operation of the business makes economic sense because the completed product is worth more than the individual component parts. In similar fashion, operation of a business, for a limited time, may preserve its going concern value and/or otherwise maximize its sale value.

In this case, continued operation of the PTI makes the most economic sense. The real estate agent who will be selling the PTI, AM, has advised Reger the sales value of the PTI is much higher if it remains open and operating. The upcoming six months is the high and peak season for the PTI. If the debtor's representations as to money earned by the PTI last year are accurate, (approximately 100,000.00) there should be adequate funds to pay ongoing expenses and to show a profit.

All of the taxes, insurance, payroll and vendors for the PTI appear to be paid, current and in order. There will be an onsite manager to run the business. All money in and money out will be under Reger's control. An application to employ a real estate broker, the same one who has worked on selling the property in the past, is being filed with these papers. Once a buyer is located a sale motion will be made.

### III. CONCLUSION

For all the reasons set forth above Reger respectfully requests this court enter an order authorizing him to operate the PTI for a limited period of time, six months, pending consummation of a sale of the business and for any further relief the court deems appropriate.

Date: October 30, 2009

/s/ Michael P. Dacquisto
MICHAEL P. DACQUISTO,
Attorney for Chapter 7 Trustee,
JOHN REGER