Fredrick E. Clement, State Bar No. 132520
Attorney at Law
1300 West Street, Suite C
Redding, CA 96001
(530) 229-3900
Email: fredrick@fredrickclementlaw.com

Attorneys for Debtor and Debtor in Possession
Rosenau Investments, Inc.

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| In re | ) Case No.: 09-42219 |
| ROSENAU INVESTMENTS, INC. | ) **Date: September 21, 2010** |
| Debtor. | ) **Time: 1:30 p.m.** |
| | ) **Loc.: Courtroom 32, Dept. B** |
| | ) **501 I Street, 6th Floor** |
| | ) **Sacramento, CA 95814** |
| | ) **Judge: Thomas C. Holman** |

**[PROPOSED] DISCLOSURE STATEMENT
FOR DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
Dated August 5, 2010**

## I.
## INTRODUCTION

Chapter 11 debtor and debtor in possession Rosenau Investments, Inc" ("Debtor" or "Rosenau Investments"), in consultation with the Official Committee of Unsecured Creditors (the "Committee") for the Debtor hereby provides this disclosure statement ("Disclosure Statement") to provide adequate information to creditors and equity security holders in order to allow them to make an informed decision to accept or reject the Debtor's Plan of Reorganization dated August 5, 2010 (the "Debtor's Plan"). The Plan is attached to this Disclosure Statement as <u>Exhibit 4</u>. Section 1125 of the Bankruptcy Code requires that, prior to the solicitation of acceptances or rejections of a plan of reorganization, creditors must be provided with a disclosure statement containing adequate information regarding the debtor and the plan. The Bankruptcy Court has approved this Disclosure Statement as having adequate information, and has further established a deadline by which creditors may indicate their acceptance or rejection of the Debtor's Plan. The Debtor urges you to carefully review the information in this Disclosure Statement and then to vote to accept the Debtor's Plan by the deadline set forth in the Order served with this Disclosure Statement.

This Disclosure Statement describes the history and past financial performance of Rosenau Investments, the causes of the Chapter 11 bankruptcy filing and significant events occurring during the Chapter 11 case. The Disclosure Statement also describes the amount and nature of claims currently asserted against Rosenau Investments and describes the terms of the Debtor's Plan. In general, the Debtor's Plan divides creditor claims into various classes and provides for the satisfaction of Allowed Claims in order of their priority to the extent possible from the proceeds of liquidation of the Debtor's assets.

This Disclosure Statement is being sent to all creditors whose claims are deemed impaired under the terms of the Debtor's Plan. Other creditors—those whose claims are not deemed impaired—may request a copy of this Disclosure Statement, but are not entitled to vote to accept or reject the Debtor's Plan. If your Claim is classified in an impaired class, it is important that you vote on the Debtor's Plan by the deadline established by the Court. In order for the Plan to be confirmed by the Bankruptcy Court, the Plan must receive votes accepting the Plan from one-half in number and two-thirds in amount, of claims voting in at least one class. Confirmation of the Plan may still occur even if Rosenau Investments fails to obtain the necessary number of votes to accept from all classes or if holders of claims object to the Plan. Upon Bankruptcy Court approval of the Debtor's Plan—known as "Confirmation"—the Debtor's Plan will be binding upon all creditors and shareholders regardless of whether an individual creditor or class of creditors has voted in favor of the Debtor's Plan.

The representations contained in this Disclosure Statement are those solely of Rosenau Investments and not of its attorneys or other consultants, except as otherwise specifically indicated. No representations concerning the Debtor Rosenau Investments, including but not limited to, representations as to its future operations, cash flow, projections, the value of its properties, or any effect of the transactions proposed under the Plan, are authorized by Rosenau Investments except as set forth in this Disclosure Statement. Creditors should recognize that projections of future events, such as cash flow projections, revenue projections and cost estimates are necessarily imperfect, are based only on the information available to Rosenau Investments at this time, and may be impacted by subsequent events.

This Disclosure Statement attempts to accurately describe the provisions of the Debtor's Plan. However, if there is an inconsistency between the terms of the Debtor's Plan and the description of the Debtor's Plan contained in this Disclosure Statement, the terms of the Debtor's Plan shall be controlling. The representations concerning the Debtor's Plan contained herein supersede all prior oral or written representations. No representations concerning the Debtor's Plan other than those contained in this Disclosure Statement are authorized.

In reading and reviewing this Disclosure Statement, please note that capitalized terms used herein without definition have the meaning given them in the Debtor's Plan.

## II.
## VOTING PROCEDURES

A ballot is attached at the end of this Disclosure Statement. All creditors entitled to vote on the Plan may cast their votes for or against the Debtor's Plan by completing, dating, signing and returning the enclosed ballot to:

Fredrick E. Clement, State Bar No. 132520
Attorney at Law
1300 West Street, Suite C
Facsimile (530) 229-3904
Email: fredrick@fredrickclementlaw.com

Ballots may be returned by hand delivery, United States Postal Service, overnight mail or facsimile, but must be returned by 5:00 p.m. (Pacific Standard Time) on _____, 2010. Any creditor holding claims classified in more than one class under the Debtor's Plan must file a separate ballot for each class. Following the last day for voting, Rosenau Investment's counsel will count the votes and file a report with the Bankruptcy Court prior to the hearing on Confirmation.

## III.
## BACKGROUND OF ROSENAU INVESTMENTS

Commencing in 1992, the Debtor, based out of Redding, California, has been in the business of making "hard money" loans secured by real property, and purchasing real property. The sole shareholder is Robert R. Rosenau (sometimes referred to as "Robert Rosenau," or "Rosenau, Sr."). The Debtor has primarily been managed by Robert Rosenau (sometimes referred to as "Rosenau, Sr."), but has also been managed, including during periods when Rosenau, Sr. was ill, by his wife Donna Rosenau and their son Robert E. Rosenau (sometimes referred to as Rosenau, Jr."). Donna Rosenau and Robert E. Rosenau have not been involved in the management of the Debtor for over a year, and Robert Rosenau, Sr., has been the sole manager.

In general, the business practice of the Debtor was as follows: Persons interested in obtaining funds to purchase, or rehabilitate, real estate would contact the Debtor, asking for a loan. Persons interested in making sub-prime real estate loans also contacted the Debtor and inquired about loan opportunities. The Debtor evaluated the proposed loan and provided information about it to persons interested in making such loans, asking if they were willing to participate. Once willing lenders with sufficient funds to make the loan were identified, each lender (referred to as "investors") would write a check to the Debtor, and, in turn, the Debtor would execute an unsecured promissory note in favor of the investor. The promissory note identified the project to which the loan pertained. The Debtor used the loaned funds, depending on the particular project, either to purchase real property, or it would obtain an amortized promissory note secured by a deed of trust. Each

month, the real estate borrower made payments to Rosenau Investments, Inc., and Rosenau Investments made interest payments to investors. Upon the sale of one of the real properties, the sale proceeds would be paid to the investors or participants in that asset.

## A. The Factors Leading Up to the Chapter 11 Filing

As the value of real estate declined in recent years, the Debtor's assets declined in value and income from its assets also declined and in most cases ceased by the beginning of 2008. Beginning in February 2008, the Debtor stopped making monthly interest payments to its investors. In or about April 2008, a meeting of investors was held by the Debtor, at which meeting the parties discussed the Debtor's insolvency and possible scenarios for the sale and/or distribution of assets. The majority of investors favored the Debtor continuing efforts to sell properties and to position its properties for sale, and to pay the sale proceeds to the investors tied to such asset. The Debtor continued to sell some assets in 2008 and 2009, and to distribute the proceeds to the investors tied to such asset.

Commencing in March, 2009, certain investors initiated state court lawsuits and sought writs of attachment against the Debtor's assets. The first attachment lien was obtained in or about June, 2009. The Debtor filed a chapter 7 petition on October 13, 2009, primarily in as an effort to trigger the automatic termination provisions of California Code of Civil Procedure § 493.030(b) (attachment liens levied less than 90 days before a bankruptcy petition terminate upon the bankruptcy filing).

## IV.
## THE BANKRUPTCY PROCEEDINGS

The Debtor filed a chapter 7 case because it was unable to pay a retainer sufficient to hire a chapter 11 attorney. Shortly after the filing, Gus Vasilakis paid Fredrick Clement $50,000 as an attorney retainer. Mr. Clement substituted in as counsel for the Debtor, and made a Motion to Convert the Case to Chapter 11, which was heard and granted on January 5, 2010. The Motion to Covert was supported by over 20 creditors, but also opposed by several creditors, and also opposed by the Chapter 7 trustee, and by the Securities & Exchange Commission.

After conversion of the case, Rosenau Investments has continued to manage its affairs as the debtor in possession under the management of Robert Rosenau and has continued to liquidate its assets. Certain highlights occurring during the Chapter 11 case are described below.

An official Committee of Unsecured Creditors was appointed ("Committee") pursuant to 11 U.S.C. § 1102 on February 25, 2010, and was amended on March 12, 2010. Thomas Phinney, Parkinson Phinney was authorized to be Committee counsel by order dated May 28, 2010.

Rosenau Investments obtained approval from the Bankruptcy Court to employ real

estate brokers to market and sell its real property. The Debtor obtained authority from the Bankruptcy Court to sell certain of its real properties, including 1254 98th Ave., Oakland; 7832 Ney Ave., Oakland, 1427 Willow, Oakland, and 946 61st Street, Oakland. The buyers backed out of the sales for Ney and Willow, but the sale of 1254 98th Ave. and 946 61st Street have closed. The Debtor also currently has motions pending to approve a sale of the Pepper Tree Inn Hotel, Palm Springs, and 946 61st St., Oakland.

## V.
## THE DEBTOR'S ASSETS AND LIABILITIES

### A.    The Debtor's Assets

At the time of the Petition, the Debtor owned fifteen separate real estate assets (some of which are the subject of sale motions). Ten of the parcels are fully developed, including nine residential parcels and a 35 unit operating hotel known as The Pepper Tree Inn in Palm Springs ("Hotel"). The Debtor also owns a 17-lot subdivision (including a home which is approximately 70% complete and 16 undeveloped lots), and four undeveloped lots. The Debtor also holds six promissory notes secured by real property.

The equity in the assets is subject to substantial uncertainties and variables, but the total value is estimated to be in the range of $4 to $5 million. The Debtor's current estimate of the value of its assets is set forth in the chart attached hereto as Exhibit 1. "Fair market value" of the assets is the price at which the Debtor hopes to sell the asset during this Case, and believes that it is a reasonable estimate of the realizable market value of the asset with a reasonable amount of time for marketing. The total fair market value of the Debtor's assets, without accounting for liens or administrative costs associated with a sale, is estimated to be $5,523,000. The "liquidation" value of the assets is the price at which the Debtor believes that asset will sell with less time for marketing, and with buyers that are aware that the Debtor is under some compulsion to sell. The Debtor believes that the liquidation value is a reasonable estimate of the value of the assets in chapter 7. The total liquidation value of the Debtor's assets, without accounting for liens or administrative costs associated with a sale, is estimated to be $4,136,500.

### B.    The Debtor's Liabilities

Investor Debt. There are 82 "investors" in the Debtor with claims totaling almost $20 million. Each investor has between 1 and 14 separate unsecured investment loans in the Debtor, with a total claim for each investor ranging from a low of approximately $20,000 to a high of over $2 million, with an average total claim per investor of approximately $220,000. Each of the investor loans are tied to a particular asset (i.e., one of the real property assets or one of the promissory notes secured by real property). As stated above, the general prepetition practice between the Debtor and investors was to treat the investors, as between the Debtor and the investors, as if they were secured creditors on the asset to which their investment was tied.

Other Unsecured Debt. There are other unsecured claims totaling approximately $600,000 to the Debtor made by Evelyn Brooks Estate, Lisa Rosenau, and Wells Fargo Business Direct. There may also be small unsecured claims held by other creditors, such as in connection with the operation of the Pepper Tree Hotel.

Secured Debt. As discussed above, the "investor debt" is unsecured. There are secured claims against assets of the Debtor as referenced on Exhibit 1 attached hereto, and also as referenced on Exhibit 2 attached hereto, which is a table showing 73 classes of secured claims and their proposed treatment under the Plan. Secured claims against the Debtor's assets include:

(1) a deed of trust held by James Hull in the approximate amount of $57,000 against 17105 Marianas Ave, Cottonwood CA;

(2) a deed of trust in the approximate amount of $135,000 held by Gus Vasilakis against 1784 9th St., Oakland CA;

(3) a disputed writ of attachment lien in the amount of $565,000 held by Nicodemus Family Trust on the debtor's promissory note which is secured by a deed of trust on Cedars Road real property in Redding, California;

(4) temporary protective order liens which the Debtor believes are terminated in favor of (a) Leanne Weber, (b) Melvin and Virginia Hendrickson, and (c) Nicodemus Family Trust;

(5) unpaid real property taxes on numerous properties; and

(6) liens imposed by the City of Oakland for alleged non-compliance with the Debtor's real properties in Oakland with various rules, regulations, and ordinances of the City of Oakland, sometimes referred to as "abatement liens." The amount andscope of these liens is a moving target, and is one of the large variables in trying to predict the outcome of a sale of the Debtor's properties. The abatement lien problem has become significant due to a number of factors:

(a) the Debtor hired a company in 2009 (RMD Services, LLC "RMD", owned by Ryan Nathan) to manage and collect rent from its Oakland properties. The Debtor believes that RMD the Debtor has misrepresented facts to the Debtor, has badly mismanaged the properties, and has failed to turnover any rents at all to the Debtor. After the conversion to chapter 11, the Debtor employed a new management company, Woodminster Real Estate.

(b) Certain areas of Oakland where the Debtor owns properties have experienced an upsurge in crime, making it difficult to protect andmanage properties, particularly with the malfeasance or nonfeasance of RMD's

management of the properties;

(c) During the period the case was in chapter 7, all communications to the Debtor relating to abatement lien issues on the Oakland properties were left unanswered by the Trustee. In many cases the lack of a prompt response to City of Oakland notices can result in severe consequences, including up to $1,000 per day in "penalties" for certain alleged violations.

(d) The City of Oakland has become unpredictable, inconsistent, and severe in its imposition and enforcement of abatement liens. The most notable example relates to 2 lots (nearly completed residence) at 27th Street & Market Street, Oakland, California (2 lots), on which the Debtor holds deeds of trust. The City of Oakland has recently recorded a "prospective" lien in the amount of nearly $400,000.

## VI.    Classification of Creditors

Under the Plan, the Debtor's liabilities are separated into various classes. The Debtor's liabilities are generally described below with respect to these classes, but creditors should consult the Plan to determine the exact description of each class of claims. The Bar Date for creditors to file proofs of claim was May 13, 2010 (July 7, 2010 for government claims). For claims listed on the Debtor's schedules as undisputed, liquidated, and noncontingent, proofs of claims are deemed filed pursuant to 11 U.S.C. § 1111(a).

### 1.    Priority Debt
#### a.    Employee Priority Claims

The Debtor believes that the only priority employee claim is held by Robert Rosenau in the amount of $8,166.67 for accrued unpaid wages incurred during August 1, 2010 to the Petition Date.

#### b.    Priority Claims of Tax Authorities

At the time of commencement of this case, Rosenau Investments was not aware of any obligations to any tax authorities that would have priority under Section 507(a)(8) of the Bankruptcy Code.

### 2.    Secured Debt

Rosenau Investment's secured debt is divided into 73 classes, the majority of which concern real property taxes and "abatement" type liens claimed by the City of Oakland. To the extent that a secured claim is undersecured, the undersecured portion is classified in Class 3(b) as an unsecured claim. Attached hereto as Exhibit 2 is a table describing the 73 classes of secured creditors and their treatment under the plan.

### 3. Unsecured Debt

Class 3(b) consists of all general unsecured creditors not otherwise included in Class 3(a) and the undersecured portion of secured claims. There are approximately 302 Class 3(b) claims totaling approximately $17,293,597 according to the Debtor's Schedule F.

# VII.
# SUMMARY OF PLAN

After substantial evaluation of financial information and the legal requirements for confirmation of a chapter 11 plan, the Debtor and the Committee determined that a chapter 11 plan should provide for a "global" pro rata distribution to investors and other unsecured creditors. The Plan classifies claims into various classes and provides for payment of each class from the proceeds of the liquidation of the Debtor's assets in the priority set forth in this Plan. In general, the Plan provides for the sale of the Debtor's assets, payment in full of administrative claims, secured claims and priority claims, and payment of unsecured claims pro rata from sale proceeds. The chapter 11 plan is intended to enable the Debtor a reasonable amount of time to market and sell the real estate to obtain the market value of the asset, and at the same time move forward expeditiously to complete the process of winding up the affairs of the Debtor. After confirmation, monies will be distributed by a Plan Administrator. Creditors should review the Plan to determine the specific classification and treatment of their claims.

### A. Unimpaired Classes

The following classes are unimpaired under the Plan:

Class 1(a) (Employee Priority Claims)
Class 1(b) (Taxing Authorities Priority Claims)
Class 2 Secured Creditors: Classes 2.2.1 through 2.2.36, 2.2.56 through 2.2.71
Class 3(a) (Convenience Class claims [under $500])

A class of claims or interests is unimpaired if, in general, the Plan leaves unaltered the legal, equitable, and contractual rights to which the claim or interest entitles the holder of such claim or interest, except that the Plan may, under certain circumstance, prohibit the exercise of any right to pursue co-debtors or accelerate the payments due on account of any Claim.

### B. Impaired Classes.

The following classes are impaired under the Plan. The paragraph number set forth next to the class indicates the paragraph of the Plan that sets forth the specific treatment of the class.

Classes 2.2.37 through 2.2.55 and 2.2.72 through 2.2.73 (see <u>Exhibit 2</u>).
Class 3(b) (General Unsecured Creditors)
Class 4 (Shareholder Interests)

3B and 4A are impaired under this Plan.Holders of claims in impaired classes should refer to the Plan and, in particular, the paragraphs of the Plan set forth above, to determine the exact treatment of such Claim under the Plan.

C.    **Executory Contracts**

The Plan provides for the assumption and certain contracts, and for the rejection of certain contracts, as described in the Plan.

## VIII.
## IMPLEMENTATION OF THE PLAN

Rosenau Investments intends to implement the Plan by utilizing its cash on hand and the proceeds of the liquidation of its assets to pay creditors to the extent possible.

Debtor anticipates that the tax consequences in selling the real property will be not be substantial. No capital gains taxes are anticipated upon the sale of the Debtor's assets.

On the Effective Date Debtor will appoint a Plan Administrator (initially Robert R. Rosenau) to manage the postconfirmation Debtor, and will appoint a Disbursing Agent to manage the cash of the Debtor and make distributions. All proceeds from the sale of assets, and all proceeds of litigation brought by the Debtor or the Committee, will be used to fund liquidation expenses and distributions to creditors, as further specified in the Plan.

Under the Plan, the postconfirmation Debtor, and the Committee, with the assistance of the Debtor and Plan Administrator, will have authority to commence certain litigation on behalf of the Debtor. Specifically, as of the Effective Date, claims held by the Debtor or the Estate, whether arising under §§ 502, 506, 510, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552 or 553 of the Code, under non-bankruptcy law, or otherwise, relating to any dispute with secured creditors as referenced on Exhibit 1, shall be deemed fully preserved and vested in the Postconfirmation Debtor. As of the Effective Date, claims held by the Debtor or the Estate, whether arising under §§ 502, 506, 510, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552 or 553 of the Code, under non-bankruptcy law, or otherwise, relating to (1) preference claims and avoidance claims, including preference claims referenced at paragraph 3(a) of the Debtor's Statement of Financial Affairs dated November 19, 2009 or as amended; (2) claims of any kind against Robert R. Rosenau, Robert E. Rosenau, and Donna Rosenau, or against affiliated entities or persons; or (3) claims relating to the RMD Services, LLC ("RMD") or its owner Ryan Nathan concerning management and collection of rent from the Debtor's Oakland properties, shall be deemed fully preserved and vested in the Committee.

# IX.
# LIQUIDATION ANALYSIS

The Bankruptcy Code requires that each holder of a claim in an impaired class either (a) accept the Plan or receive or (b) will receive or retain under the Plan property of a value as of the Effective Date of the Plan that is not less than the amount that such holder would receive if the debtor were liquidated under Chapter 7. Rosenau Investments believes that the Plan meets this requirement. This section of the Disclosure Statement explains the Debtor's analysis.

First, Rosenau Investments proposes to file a liquidating plan. If the Debtor were to be liquidated in a Chapter 7 case, a trustee would be appointed to liquidate the assets of Rosenau Investments. The Debtor believes it is unlikely that a Chapter 7 trustee would be able to obtain the same value for the Debtor's real as the Debtor. Furthermore, it is anticipated that the Debtor's cost of maintaining the real property during the marketing period, and in disbursing funds, will be less than a Chapter 7 trustee's costs. The Debtor's Liquidation analysis is attached hereto as Exhibit 3. The Debtor and the Committee believe that the Plan is better for creditors than a liquidation under Chapter 7. Asset forth on Exhibit 3, the estimated projected net amount available for distribution to unsecured creditors under the chapter 11 plan is $3,516,003, and the estimated projected net amount available for distribution to unsecured creditors under a hypothetical chapter 7 plan is $2,230,423

# X.
# DISCLOSURE REQUIRED BY THE BANKRUPTCY CODE

The Bankruptcy Code requires the debtor to provide certain disclosures prior to confirmation of a plan of reorganization. Pursuant to Section 1129(a) of the Bankruptcy Code, Rosenau Investments makes the following disclosures:

**A.    Post-Confirmation Directors and Officers**

Following the confirmation of the Plan, the following persons will continue in the management of Rosenau Investments and Reorganized Rosenau Investments:

Robert Rosenau will continue as the President and Director of Rosenau Investments, as Plan Administrator, and as manager of the Debtor's affairs, subject to the authority of the Disbursing Agent over cash, and the oversight of the Committee.

**B.    Post-Confirmation Insider Employees**

Following the confirmation of the Plan, the following insiders will or may be employed or retained by Rosenau Investments and Reorganized Rosenau Investments as needed: Robert Rosenau

# XI.
## CONCLUSION

This Disclosure Statement is provided to assist you in voting on the Plan in an informed fashion. If the Plan is confirmed, you will be bound by its terms. Therefore, you are urged to review this material and to make such further inquiries you deem appropriate, and then cast an informed vote on the Plan.

### PROPONENTS:

Dated: August 5, 2010          Rosenau Investments, Inc.

By _____
Robert Rosenau, President

APPROVED AS TO FORM

By _____
Fredrick Clement
Attorneys for Rosenau Investments, Inc.

| Properties | Fair Market Value | Liq. Value | Taxes, Deeds of Trust, Attachments, Liens |
|---|---|---|---|
| Pepper Tree Inn, 622 North Palm Canyon, Palm Springs, CA 92262 | 2,000,000 | 1,250,000 | |
| Buckeye Pines, Redding, CA 16 lots | 735,000 | 590,000 | Taxes $60,000 |
| Marianas, Cottonwood | 350,000 | 350,000 | Hull 57,000 Deed of Trust |
| 1620 17th Ave, Oakland | 50,000 | 30,000 -50,000 | Oakland Taxes |
| 1254 98th Ave, Oakland | 160,000 | 140,000 | 50,000 Taxes |
| 9425 Peach | 274,000 | 250,000 | 5,000 |
| Oakdale Lots | 100,000 | 50,000 | |
| 1427 Willow Street, Oakland, CA | 90,000 | 50,000 | 50,000 |
| 7832 Ney Oakland | 160,000 | 125,000 | 360,000 |
| 946 61st Oakland | 150,000 | 125,000 | |
| 886 McElroy, Oakland, CA | 140,000 | 100,000 | 25,000 taxes |
| 1784 9th St. Oakland | 250,000 | 165,000 | 135 Vasilakis Deed of Trust |
| Promissory Notes Secured by the Following Property | | | |
| Cedars Rd, Redding | 650,000 | 500,000 | $560,000 Disputed Nicodemus Writ of Attachment Lien |
| 772 & 774 Lake Blvd, Redding | 100,000 | 80,000 | $20,000 |
| 6016 Alisad Pleasanton | 0 | 0 | Estate Holds 3rd Deed of Trust |
| 27th Street & Market Street, Oakland, California (2 lots) | 300,000 | 200,000 | 50,000 each lot |
| West St. Lot, Redding | 14,000 | 1,500 | Debtor has 1/6/ of Deed of Trust, other 5/6 of Deed of Trust is held by Jason Jones |
| Shasta View Lots (2) Redding | 200,000 | 160,000 | |
| | 5,523,000 | 4,136,500 | |

{172/00000/JR/A0127272.DOCX}

**Exhibit 1** to Debtor's Plan of Reorganization Dated August 5, 2010:

Classes and Treatment of Secured Creditors

| Secured Creditors Class No. | Name and Address of Creditor | Description of Lien Claim; Treatment Unless otherwise stated, the treatment is as follows: To the extent not otherwise satisfied prior to the Effective Date of the Plan, the Allowed Secured Claim in each class shall be paid or otherwise satisfied in full by the Debtor from the sale proceeds of the collateral securing the obligation. Any deficiency shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Real Property Debtor either owns the real property, or owns a promissory note which is secured by a deed of trust against the real property described below. |
|---|---|---|---|
| 2.2.1 | City Of Oakland, Community & Economic Dev. Agency 250 Frank H. Ogawa Plaza, Room 2340 Oakland. CA 94812 | Disputed 2009 Invoice for Code Violations | 7832 Ney Ave. Oakland, CA |
| 2.2.2 | City Of Oakland CEDA Building Services 250 Frank H. Ogawa Pl., Rm 2340 Oakland, CA 94612 | Disputed Priority Lien and Special Assessment | 7832 Ney Avenue Oakland, CA |
| 2.2.3 | City of Oakland Mandatory Garbage Section 150 Frank H. Ogawa Pl., Suite 5342 Oakland, AC 94612 | Disputed 2009 Delinquent Refuse Service | 1250 98th Avenue |

**Exhibit 1 to Debtor's Plan of Reorganization Dated August 5, 2010:**

**Classes and Treatment of Secured Creditors**

| 2.2.4 | City of Oakland Mandatory Garbage Section 150 Frank H. Ogawa Plz, Suite 5342 Oakland, CA 94612 | Disputed 2009 Refuse Lien | 9425 Peach Street |
|---|---|---|---|
| 2.2.5 | City of Oakland CEDA Building Services 250 Frank H. Ogawa Pl., Rm 2340 Oakland, CA 94612 | Disputed 2009 Abatement Action | 946 61st Street, Oakland |
| 2.2.6 | City of Oakland CEDA Building Services 250 Frank H. Ogawa Pl., Rm 2340 Oakland, CA 94612 | Disputed 2009 Refuse Lien | 1620 17th Street |
| 2.2.7 | City of Oakland Mandatory Garbage Section 150 Frank Ogawa Pl., Rm 2340 Oakland, Ca 94612 | Disputed 2009 Refuse Lien | 9425 Peach Street, Oakland |
| 2.2.8 | City of Oakland CEDA Building Services 250 Frank H. Ogawa Pl., Rm 2340 Oakland, CA 94612 | Disputed 200 Priority Lien | 946 61st Street, Oakland |

**Exhibit 1** to Debtor's Plan of Reorganization Dated August 5, 2010:

**Classes and Treatment of Secured Creditors**

| | | | |
|---|---|---|---|
| 2.2.9 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Abatement Proceeding | 946 61st Street, Oakland |
| 2.2.10 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2007 Prospective Lien and Special Assessment | 946 61st Street |
| 2.2.11 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2007 Priority Lien and Special Assessment | 946 61st Street |
| 2.2.12 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2006 Priority Lien and Special Assessment | 946 61st Street |
| 2.2.13 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2006 Priority Lien and Special Assessment | 946 61st Street |
| 2.2.14 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 946 61st Street |
| 2.2.15 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 1620 17th Street |

**Exhibit 1** to Debtor's Plan of Reorganization Dated August 5, 2010:

**Classes and Treatment of Secured Creditors**

| 2.2.16 | City of Oakland CEDA Building Services 250 Frank H. Ogawa Pl., Rm 2340 Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 1620 17th Street |
|---|---|---|---|
| 2.2.17 | City of Oakland CEDA Building Services 250 Frank H. Ogawa Pl., Rm 2340 Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 1620 17th Street |
| 2.2.18 | City of Oakland Mandatory Garbage Section 150 Frank H. Ogawa Pl., Suite 5342 Oakland, CA 94612 | Disputed 2009 Refuse Lien | 1620 17th Street |
| 2.2.19 | City of Oakland CEDA Building Services 250 Frank H. Ogawa Pl., Rm 2340 Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 1620 17th Street |
| 2.2.20 | City of Oakland CEDA Building Services 250 Frank H. Ogawa Pl., Rm 2340 Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 7832 Ney Avenue |
| 2.2.21 | City of Oakland CEDA Building Services 250 Frank H. Ogawa Pl., Rm 2340 Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 886 McElroy |
| 2.2.22 | City of Oakland CEDA Building Services 250 Frank H. Ogawa Pl., Rm 2340 Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 886 McElroy |

| | | | |
|---|---|---|---|
| 2.2.23 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Refuse Lien | 1250 98th Avenue |
| 2.2.24 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien | 1427 Willow Street |
| 2.2.25 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Prospective Lien and Special Assessment | 1427 Willow Street |
| 2.2.26 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount:<br>$5,770.45  2009 Property Tax | 1254 98th Avenue, Oakland, CA |
| 2.2.27 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount:<br>$6,159.36 2009 Property Tax | 886 McElroy Street, Oakland, CA |
| 2.2.28 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount:<br>$3,138.11  2008/2009 Ad Valorem Real Property Taxes | 1620 17th Street, Oakland, CA |
| 2.2.29 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount:<br>$2.415.19  2008/2009 Ad Valorem Real Property Taxes | 1784 19th Street, Oakland , CA |

Exhibit 1 to Debtor's Plan of Reorganization Dated August 5, 2010:

Classes and Treatment of Secured Creditors

| | | | |
|---|---|---|---|
| 2.2.30 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount:<br>$2,602.29 2008/2009 Ad Valorem Real Property Taxes | 946 61st Street, Oakland, CA |
| 2.2.31 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount:<br>$10,076.84 2008/2009 Ad Valorem Real Property Taxes | |
| 2.2.32 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount:<br>$24,308.71 Unknown Ad Valorem Real Property Taxes | Ney Avenue |
| 2.2.34 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount:<br>$1,565.40 2008/2009 Ad Valorem Real Property Taxes | Willow Street, Oakland |
| 2.2.35 | Gus Vasilakis & Kathleen Valilakis<br>1985 Revocable Living Trust<br>7420 Danish Lane<br>Redding, CA 96002 | Scheduled Amount:<br>$148, 676.28<br>Deed of Trust | 9th Street, Oakland CA |
| 2.2.36 | James T. Hull, Sr.<br>4617 Underwood Blvd.<br>Redding, CA 96003 | Scheduled Amount:<br>$57,000.00 2008 Remodel Deed of Trust | 17105 Marianas Way, Cottonwood, CA |
| 2.2.37 | Leanne F. Weber<br>2530 Templeton Drive<br>Redding, Ca 96002 | Disputed 6/9/03 Temporary Protective Order September 14, 2009 CCP 486.110;<br>Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the | 9th Street, Oakland CA |

| | | | |
|---|---|---|---|
| | | payments on Class 3B Claims. | |
| 2.2.38 | Leanne F. Weber 2530 Templeton Drive Redding, Ca 96002 | Disputed 12/9/03 Temporary Protective Order September 14, 2009 CCP 486.110. Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Pepper Tree Inn |
| 2.2.39 | Leanne F. Weber 2530 Templeton Drive Redding, Ca 96002 | Disputed 1/21/04 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 1427 Willow Street, Oakland CA |
| 2.2.40 | Leanne F. Weber 2530 Templeton Drive Redding, Ca 96002 | Disputed 6/1/07 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Buckeye Pines, Redding, CA |
| 2.2.41 | Leanne F. Weber 2530 Templeton Drive Redding, Ca 96002 | Disputed 6/1/07 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim | 4550 & 4580 Cedars Road, Redding, CA |

| | | | |
|---|---|---|---|
| | | shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | |
| 2.2.42 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 6/3/03 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 1784 9th Street Oakland, CA |
| 2.2.43 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 7/7/05 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Oakdale Avenue Lots, Oakland, CA |
| 2.2.44 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed Date Unknown Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 1427 Willow Street, Oakland, CA |
| 2.2.45 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 2/1/06 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B | Pepper Tree Inn |

| | | Claims. | |
|---|---|---|---|
| 2.2.46 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 3/16/06; Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 772-774 Lake Blvd, Redding, CA |
| 2.2.47 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed Date Unknown Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 886 McElroy Street, Oakland, CA |
| 2.2.48 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 2/1/08 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 17105 Marianas Way, Cottonwood, CA |

**Exhibit 1** to Debtor's Plan of Reorganization Dated August 5, 2010:

**Classes and Treatment of Secured Creditors**

| 2.2.49 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 12/1/06 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Oakdale Avenue Lots, Oakland, CA |
|---|---|---|---|
| 2.2.50 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 4/17/07 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 9425 Peach Street, Oakland, CA |
| 2.2.51 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 7/18/07 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 7832 Ney Avenue, Oakland, CA |
| 2.2.52 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 7/23/07 Temporary Protective Order September 14,2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Buckeye Pines, Redding, CA |

**<u>Exhibit 1</u> to Debtor's Plan of Reorganization Dated August 5, 2010:**

**Classes and Treatment of Secured Creditors**

| | | | |
|---|---|---|---|
| 2.2.53 | Nicodemus Family 2006 Trust Rex & Jill Nicodemus, Trustees 855 Boulder Lane Lincoln, CA 95648 | Disputed 7/12/04 TPO Writ of Attachment; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Buckeye Pines, Redding, CA |
| 2.2.54 | Nicodemus Family 2006 Trust Rex & Jill Nicodemus, Trustees 855 Boulder Lane Lincoln, CA 95648 | Disputed 10/12/04 TPO Writ of Attachment; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 946- 61st Street, Oakland, CA |
| 2.2.55 | Nicodemus Family 2006 Trust Rex & Jill Nicodemus, Trustees 855 Boulder Lane Lincoln, CA 95648 | Disputed 6/1/07 TPO Writ of Attach. Lien is subject of litigation (Shasta County Superior Court Case No. 166108. To the extent not otherwise satisfied prior to the Effective Date of the Plan, to the extent that the lien of this class is Allowed it shall be paid or otherwise satisfied in full by the Debtor from the sale proceeds of the collateral securing the obligation. Any deficiency shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Promissory Note Secured by 4550 & 4580 Cedars Road, Redding, Ca |
| 2.2.56 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |

{172\00000\JR\A0126142.DOCX}

Exhibit 1 to Debtor's Plan of Reorganization Dated August 5, 2010:

Classes and Treatment of Secured Creditors

| 2.2.57 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$1,189.06 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |
| --- | --- | --- | --- |
| 2.2.58 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$1,189.06 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |
| 2.2.59 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$1,189.06 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |
| 2.2.60 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$1,189.06 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |
| 2.2.61 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$1,189.06 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |
| 2.2.62 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$1,201.58 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |
| 2.2.63 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$1,201.58 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |

**Exhibit 1 to Debtor's Plan of Reorganization Dated August 5, 2010:**

**Classes and Treatment of Secured Creditors**

| | | | |
|---|---|---|---|
| 2.2.64 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$1,201.58 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |
| 2.2.65 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$1,189.06 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |
| 2.2.66 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$2,809.13 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |
| 2.2.67 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$1,189.06 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |
| 2.2.68 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$1,189.06 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |
| 2.2.69 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$1,189.06 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |
| 2.2.70 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$1,189.06 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |

**Exhibit 1** to Debtor's Plan of Reorganization Dated August 5, 2010:

**Classes and Treatment of Secured Creditors**

| 2.2.71 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |
|---|---|---|---|
| 2.2.72 | Weber Family Trust William Weber & Leanne Weber, Trustees 2530 Templeton Drive Redding, CA 96002 | Disputed 3/29/07 TPO Writ of Attachment; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 6016 Alisal Street, Pleasanton, CA |
| 2.2.73 | Other Secured Claims. This Class consists of any other Secured Claims against the Debtor other than those in Classes 2.1 to 2.72 | Any other Secured Claims other than those in Classes 2.2.1 through 2.2.72 shall retain their liens securing the Claims and shall receive deferred cash payments totaling at least the allowed amount of their Claims, of a value, as of the Effective Date of the Plan, of at least the value of each claimant's interest in the collateral as required under section 1129(b)(2) of the Code; provided however, that the Proponents reserve the right to require each claimant to remove, at its own cost and peril and without damage to any property of the Estate, and at a time mutually convenient to such holder and the Debtor, such property as to which such holder holds a perfected security interest. Such holder may file and assert a Claim within Class 3A | Not determined |

| | | or 3B for any deficiency resulting from such abandonment and return of collateral, provided that a proof of claim therefor is filed with the Court and served upon the Debtor within thirty (30) days following the Effective Date. The Debtor does not believe there are any holders of Class 2.73 Secured Claims | |
|---|---|---|---|

**Liquidation Analysis**

|  | Chapter 11 | Chapter 7 |
|---|---|---|
| Net Cash (approximate as of June 30, 2010)[1] | 86,843 | 86,843 |
| Value of Real Properties ("Fair Market" vs. "Liquidation Value") | 5,523,000 | 4,136,500 |
| **Total Assets** | **5,609,843** | **4,223,343** |
| Deeds of Trust, Real Property Taxes, Abatement Liens (est'd) | -1,362,000 | -1,362,000 |
| Real Property Closing Costs 8% | -441,840 | -$330,920 |
| Chapter Trustee Fees (§ 326 cap estimated to be $155,725) | -- | -150,000 |
| Counsel for Trustee | -- | -150,000 |
| Chapter 11 Plan Administrator | -40,000 | -- |
| Chapter 11 Counsel | -125,000 | -- |
| Committee Counsel | -125,000 | -- |
| **Total Expenses** | **2,093,840** | **1,992,920** |
| **Estimated Projected Net Available for Distribution** | **3,516,003** | **2,230,423** |

Exhibit 3 to Disclosure Statement

---

[1] Net Cash of June 30, 2010, subject to $19,844 in postpetition operating expenses, and estimated $50,000 administrative expenses.

Fredrick E. Clement, State Bar No. 132520
Attorney at Law
1300 West Street, Suite C
Redding, CA 96001
(530) 229-3900
Email: fredrick@fredrickclementlaw.com

Attorneys for Debtor and Debtor in Possession
Rosenau Investments, Inc.

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| In re | ) Case No.: 09-42219 |
| ROSENAU INVESTMENTS, INC. | ) |
|     Debtor. | ) |

**CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY DEBTOR**
**Dated August 5, 2010**

    Chapter 11 debtor and debtor in possession Rosenau Investments, Inc., for the Chapter 11 bankruptcy case of debtor and debtor in possession, Rosenau Investments, Inc. (the "Debtor") hereby propose the following plan of liquidation (the "Plan") pursuant to Bankruptcy Code section 1121. The Plan is designed to complete the orderly liquidation of the Debtor's assets and to distribute the proceeds consistent with the requirements of the Bankruptcy Code and orders of the Bankruptcy Court previously entered in the Case.

    The Debtor, in consultation with the Official Committee of Unsecured Creditors (the "Committee") Committee, has prepared and filed a Disclosure Statement, of which the Debtor is requesting Bankruptcy Court approval. The Disclosure Statement accompanies this Plan. Please refer to the Disclosure Statement for a discussion of the Debtor's history, business, and post-petition developments, and for a summary and analysis of the Plan. All Creditors and parties in interest should consult the Disclosure Statement before voting to

Exhibit 4 to Disclosure Statement

accept or reject the Plan.

ARTICLE 1
DEFINITIONS

The following terms used in the Plan and the Disclosure Statement and shall, unless the context otherwise requires, have the meanings specified below:

      1.1    Administrative Claim:  Any cost, Claim or expense of administration of the Chapter 11 Case arising before the Effective Date approved by the Court and entitled to priority in accordance with the provisions of sections 503(b) and 507(a)(1) of the Code, including, without limitation, (a) all actual and necessary expenses of preserving the Estate, to the extent approved by the Court, (b) Professional Claims and all other allowances of compensation or reimbursement of expenses of Professional Persons to the extent approved by the Court, and (c) all reasonable, necessary and actual costs and expenses of members of the Committee to the extent approved by the Court.

      1.2    Allowed Claim:  Any Claim against the Debtor or the Estate, provided: (a) proof of which was timely and properly filed or, if no proof of Claim was filed, which has been or hereafter is scheduled as liquidated in amount and not disputed or contingent, and (b) in either such case, a Claim as to which no timely objection to the allowance thereof has been made, or to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the holder of the Claim.

      1.3    Allowed Interest:  Any Interest in the Debtor provided: (a) proof of which was timely and properly filed or, if no proof of interest was filed, which is deemed filed pursuant to the Code or this Plan, or (b) such Interest is listed with Debtor's transfer agent on the Record Date, and (c) in either such case, an Interest to which no timely objection to the allowance thereof has been made or to which any objection has been determined by a Final Order to the extent such objection was determined in favor of a person or entity asserting an Interest.

1.4     <u>Ballot</u>: The form distributed to each holder of an impaired Claim or Interest on which such holder is to indicate acceptance or rejection of the Plan, among other things.

1.5     <u>Business Day</u>: Any day on which banks are open to carry on their ordinary commercial banking business in Sacramento, California.

1.6     <u>Cash Collateral</u>: All funds of the Estate to which attaches a lien in favor of a Secured Creditor.

1.7     <u>Case</u>: Case no. 09-42219 pending before this Court.

1.8     <u>Claim</u>: Any right to payment from the Debtor or the Estate that arose on or before the Confirmation Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor or the Estate whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.9     <u>Code</u>: The Bankruptcy Reform Act of 1978, 11 U.S.C. §101 <u>et</u>. <u>seq</u>., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, and as further amended from time to time.

1.10     <u>Committee</u>: The Official Committee of Unsecured Creditors appointed in the Debtor Case pursuant to the provisions of section 1102 of the Code, by the Office of the United States Trustee ("U.S. Trustee").

1.11     <u>Confirmation Date</u>: The date of entry of the Confirmation Order in accordance with the provisions of the Code.

1.12     <u>Confirmation Order</u>: The order of the Court confirming the Plan under Code section 1129.

1.13     <u>Court</u>: The United States Bankruptcy Court for the Eastern District of California, Sacramento Division, including the United States Bankruptcy Judge presiding in this case.

1.14   <u>Creditor</u>: A person that is the holder of a Claim against the Debtor that arose on or before the Confirmation Date, or a Claim against the Debtor's Estate of any kind specified in sections 502(g), 502(h) or 502(i) of the Code.

1.15   <u>Debtor</u>: Rosenau Investments, Inc.

1.16   <u>Debtor Case</u>: Case No. 09-42219 of Rosenau Investments, Inc.

1.17   <u>Disclosure Statement</u>: That certain disclosure statement approved in the Case accompanying the Plan.

1.18   <u>Effective Date</u>: The first Business Day occurring on or after the twenty-first(21st) day following the Confirmation Date; provided, however, that if a stay of the Confirmation Order is in effect on such first Business Day, then the Effective Date shall be the first Business Day thereafter on which (a) no stay of the Confirmation Order is in effect and (b) the Confirmation Order has not been vacated.

1.19   <u>Estate</u>: The Estate created in the Case under Code section 541.

1.20   <u>Final Order</u>: An order or a judgment of a court of competent jurisdiction which (a) has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek review or rehearing has expired and as to which any right to appeal, reargue, petition for a certiorari or rehearing has been waived in a manner satisfactory to the Debtor, as a result of which such order shall have become final in accordance with applicable law, or (b) if an appeal, reargument, certiorari or rehearing thereof has been sought, the order of the lower court has been affirmed by the higher court to which the order was appealed or from which the reargument or rehearing was sought or certiorari has been denied, and time to take further appeal or to seek certiorari or further reargument or rehearing has expired.

1.21   <u>Governmental Unit</u>: This term shall have the same meaning as described at 11 U.S.C. § 101(27).

1.22   <u>Interest</u>: An equity security as defined in section 101(16) of the Code including, without limitation, the rights of each shareholder of the Debtor.

1        1.23    <u>Petition Date</u>: October 13, 2009, the date on which the Debtor filed

2    its petition for relief commencing the Case.

3        1.24    <u>Plan</u>: This Joint Plan of Reorganization proposed by the Debtor and

4    the Committee, either in its present form or as it may be amended or modified from time to

5    time.

6        1.25    <u>Postconfirmation Debtor</u>: The Debtor on and after the Effective Date

7    of the Plan.

8        1.26    <u>Pre-Petition Tax Claims</u>: Allowed Claims of Governmental Units

9    entitled to priority under Code sections 502(i) and 507(a)(8).

10        1.27    <u>Priority Claims</u>: Allowed Claims entitled to priority under sections

11    507(a) of the Code, except Administrative Claims and Pre-Petition Tax Claims.

12        1.28    <u>Professional Claims</u>: Claims of all Professional Persons employed by

13    the Debtor or the Committee.

14        1.29    <u>Professional Persons</u>: Persons retained or to be compensated pursuant

15    to sections 326, 327, 328, 330, 503(b) and 1103 of the Code.

16        1.30    <u>Proponent</u>: The Debtor.

17        1.31    <u>Pro Rata</u>: The proportion that the amount of a Claim or Interest in a

18    particular class bears to the aggregate amount of all Claims or Interests which are entitled

19    to a particular distribution (including undetermined Claims or Interests until disallowed) in

20    such class.

21        1.32    <u>Record Date</u>: The date or dates established by the Bankruptcy Court

22    for the purpose of determining the holders of Allowed Interests entitled to receive

23    distributions pursuant to the Plan.

24        1.33    <u>Robert Rosenau</u>: Robert R. Rosenau, sometimes referred to as

25    Rosenau, Sr.

26        1.34    <u>Rules</u>: The Federal Rules of Bankruptcy Procedure and Interim Rules

27    of Bankruptcy Procedure applicable to the Case, as amended.

28

1.35   Secured Claim: An Allowed Claim held by any entity to the extent of the value, as set forth in the Plan, as determined by Final Order of the Court pursuant to section 506(a) of the Code, or as agreed upon by such entity and the Debtor of any duly perfected interest in property of the Estate validly and enforceably securing such Allowed Claim.

1.36   Unsecured Claim: Any Claim that is not an Administrative Claim, a Secured Claim, or a Priority Claim.

1.37   Unencumbered Assets: All assets of the Estate on the Effective Date, which are not subject to a Secured Claim.

The words "herein," "hereof" and "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. Where not inconsistent or in conflict with the provisions of the Plan, the words and phrases used herein shall have the meanings ascribed thereto in the Code and in the Rules. To the extent of any inconsistencies between the Plan and the Disclosure Statement, the terms of the Plan control.

ARTICLE 2
CLASSIFICATION OF CLAIMS AND INTERESTS

2.1   Class 1 (Priority): Allowed Claims entitled to priority pursuant to section 507(a) of the Code, except Administrative Claims and Pre-Petition Tax Claims, as follows:

2.1.1   Class 1A (Wages): Class 1A consists of all Allowed Claims of current or former employees of the Debtor for wages, salaries or commissions, including vacation, severance, and sick leave pay earned by such employee within 180 days of the Petition Date and up to $10,950 for each individual as provided in section 507(a)(4), and Allowed Claims for contributions to any employee benefit plan as provided in section 507(a)(5). The Debtor believes that the only unpaid priority wage claim is in favor of Robert R. Rosenau in the amount of $8,166.67.

2.1.2 **Class 1B (Other Priority Claims):** Class 1B consists of all other Allowed Claims against the Debtor entitled to the treatment specified in section 1129(a)(9), except Administrative Claims, Professional Claims, and Pre-Petition Tax Claims.

2.2 **Class 2 (Secured):** All Allowed Secured Claims as follows:

2.2.1 through 2.2.73 (Secured Claims). Attached hereto as **Exhibit 1** is a chart that classifies secured claims. The chart also describes the treatment of each secured creditor, as further addressed in Article 4 of the Plan.

2.3 **Class 3 (General Unsecured):** All holders of Allowed Unsecured Claims as follows:

2.3.1 **Class 3A (Convenience Class):** Class 3A consists of any Allowed Unsecured Claim against the Debtor equal to or less than $500, or with respect to such Claim the holder thereof voluntarily reduces the Claim to $500 on the Ballot.

2.3.2 **Class 3B (General Unsecured):** Class 3B consists of all Allowed Claims of general unsecured Creditors that do not elect the treatment in Class 3A against the Debtor of whatever nature or description, including, without limitation, Claims arising from unsecured promissory notes, Claims arising from the rejection of executory contracts or unexpired leases, and Claims arising from recovery of money or property from the claimant under Code section 502(h). Class 3 Claims shall not include interest subsequent to the Petition Date, except as provided in section 4.3.2 of this Plan.

2.4 **Class 4 (Shareholders):** All holders of Allowed Interests in the Debtor. The sole shareholder of the Debtor is Robert R. Rosenau, who will not receive anything under the Plan on account of his Interest.

ARTICLE 3
SPECIFICATION AND TREATMENT OF UNCLASSIFIED CLAIMS

3.1 Other than the Professional Claims, each Administrative Claim against the Debtor or its Estate shall be paid in full as soon as practicable after the entry of an order of the Court approving such Administrative Claim or on the Effective Date,

whichever is later, unless different treatment is agreed to between the claimant and the Debtor; provided however, that the Postconfirmation Debtor is hereby authorized to pay any and all operating expenses, including professional fees, in the ordinary course of business without Court approval, as further set forth in this Plan. Except as may be expressly set forth in the Plan or by an order of the Court, no holder of an Administrative Claim shall be entitled to payment on account of any post-petition interest or penalties arising with respect to such Administrative Claim.

3.2    To the extent any Professional Person holds a Professional Claim against the Debtor or any one of them for services rendered prior to the Effective Date of the Plan, such Professional Person shall be paid in full upon Court approval pursuant to the terms of the applicable employment order.

3.3    Allowed Pre-Petition Tax Claims shall be paid in full on the Effective Date of the Plan or accordance with sections 1129(a)(9)(C) and (D).

3.4    All fees payable by the Debtor through the Confirmation Date under 28 U.S.C. §1930 shall be paid in full on the Effective Date or as soon thereafter as they may come due in the ordinary course.

ARTICLE 4
TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

4.1    Class 1 (Priority Claims):

4.1.1    Class 1A (Wages):    The holder of each Allowed Class 1A Claim shall be paid the Allowed amount of their Priority Claim in the amount required under section 507(a)(4) and section 507(a)(5) in cash on the Effective, except to the extent that the holder of a particular Claim has agreed otherwise.

4.1.2    Class 1B (Other Priority Claims):    Any Allowed Priority Claims not otherwise included in Class 1A shall be paid the Allowed amount thereof in cash on the Effective Date, except to the extent that the holder of a particular Claim has agreed otherwise.

4.2    Class 2 (Secured Claims):

Class 2.1 through 2.72: Attached hereto as Exhibit 1 is a chart that classifies secured claims. The chart also describes the treatment of each secured creditor. Generally, all secured claims to the extent Allowed and not otherwise satisfied prior to the Effective Date of the Plan, shall be paid or otherwise satisfied in full by the Debtor from the sale proceeds of the collateral securing the obligation. Any deficiency shall be paid Pro Rata from the same source as the payments on Class 3B Claims.

Class 2.73 (Other Secured Claims): Any other Secured Claims other than those in Classes 2.1 to 2.72 shall retain their liens securing the Claims and shall receive deferred cash payments totaling at least the allowed amount of their Claims, of a value, as of the Effective Date of the Plan, of at least the value of each claimant's interest in the collateral as required under section 1129(b)(2) of the Code; provided however, that the Proponent reserves the right to require each claimant to remove, at its own cost and peril and without damage to any property of the Estate, and at a time mutually convenient to such holder and the Debtor, such collateral. Such holder may file and assert a Claim within Class 3A or 3B for any deficiency resulting from such abandonment and return of collateral, provided that a proof of claim therefor is filed with the Court and served upon the Debtor within thirty (30) days following the Effective Date. The Debtor does not believe there are any holders of Class 2.73 Secured Claims

4.2.1  Class 3 (Unsecured Claims):

4.3.1  Class 3A (Convenience Class): Any Allowed Unsecured Claim against the Debtor equal to or less than $500, or with respect to such Claim the holder thereof voluntarily reduces the Claim to $500 on the Ballot, shall be paid the Allowed or reduced amount thereof, whichever amount is lower, in cash on the Effective Date or as soon thereafter as is practicable, except to the extent that the holder of a particular Claim has agreed otherwise.

4.3.2  Class 3B (General Unsecured Claims): All Allowed Unsecured Claims within Class 3B shall be paid or otherwise satisfied from any Unencumbered Funds from the sale proceeds of the Debtor's assets after all payment in

full, or reservation for payment in full, of all Administrative Claims, Priority Claims, Pre-Petition Tax Claims, Professional Claims, and Class 1 Claims, and after payment or reservation of sufficient funds to pay for all post-confirmation liquidation expenses. In the event there are sufficient Unencumbered Funds to do so, Class 3B claimants shall be entitled to interest at the legal rate as of the Effective Date on their Allowed Unsecured Claims from the Petition Date until paid in full. In the event there are insufficient Unencumbered Funds to pay all Allowed Unsecured Claims in full (which is almost certain to be the case), the holders of Allowed Unsecured Claims in Class 3B shall be paid on a Pro Rata basis. In no event shall any holder of an Allowed Unsecured Class 3B Claim receive more than the full amount of its Allowed Unsecured Claim.

4.3.3 <u>Class 4 (Shareholders)</u>: To the extent there are funds available after all Administrative and Pre-Petition Tax Claims and Class 1 Claims are paid in full, after the Class 21 through 2.73 Secured Claims are paid in full from the collateral securing their respective Claims, and after payment in full with interest of all Class 3A and 3B Allowed Unsecured Claims, and all actual or projected post-confirmation liquidation expenses have been paid in full or reserved for payment in full, all such residual amounts shall be paid Pro Rata to the holders of Allowed Interests in Class 4A. No payment is anticipated.

ARTICLE 5
UNIMPAIRED AND IMPAIRED CLASSES

5.1     Classes 1A and 1B, Classes 2.2.1 through 2.2.36, 2.2.56 through 2.2.71, Class 3Aare unimpaired under this Plan, are deemed to accept the Plan and are not entitled to vote.

5.2     Classes 2.2.37 through 2.2.55 and 2.2.72 through 2.2.73 3B and 4A are impaired under this Plan.

5.3     Classes, if any, that have already been paid in full postpetition shall receive nothing under the Plan, are deemed to accept the Plan, and are not entitled to vote.

## ARTICLE 6
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

6.1     Liquidation of Assets:  All of the Debtor's assets are hereby vested in the Postconfirmation Debtor for purposes of payment of Allowed Claims under the Plan, and payment of expenses arising after the Effective Date.  The Postconfirmation Debtor, acting through a Plan Administrator, shall continue to liquidate assets of the Estate in a prudent and businesslike manner after the Effective Date.  Such liquidation may include, without limitation, (a) sale of assets of the Debtor, or (b) distribution of property to those having an interest in the property.  On the Effective Date or as soon thereafter as practicable, the Postconfirmation Debtor shall make the payments or reserve sufficient funds to make such payments in the future, that are required under this Plan by Article 3 (unclassified Claims) and to Classes 1A and 1B, as well as sufficient funds to make payments in the future that may be required for payment of post-confirmation liquidation expenses. Except as otherwise provided in paragraph 6.6 herein, the Postconfirmation Debtor is authorized to pay any and all post-confirmation liquidation expenses without further order of the Court.

6.1.1    Postconfirmation Debtor Administration, Powers and Duties: The Postconfirmation Debtor shall have such powers as are set forth in this Plan and the Confirmation Order and which are necessary to the proper performance of its duties as set forth in this Plan.  In addition, the Committee shall continue to be authorized to serve postconfirmation and shall be entitled to exercise the rights of a Committee serving in a Chapter 11 case pursuant to the Code.  In addition, except as otherwise provided in the Plan, the Postconfirmation Debtor shall retain post-confirmation all rights of a trustee serving as a Chapter 11 trustee pursuant to the Code.  Without limiting the foregoing, the Postconfirmation Debtor may continue any operations of the business that in its discretion enhance the value of the assets and/or maximize the opportunities to liquidate the assets, including without limitation the Debtor's real properties, the Debtor's promissory notes, and any other assets of the Estate.

6.1.2 <u>Unblocking of Sale Proceeds</u>. All cash proceeds from the sale of assets pursuant to 11 U.S.C. § 363, which prior to confirmation were held in blocked accounts pursuant to LBR 5008-1(b), upon the Effective Date shall be unblocked and may be used by the Plan Administrator to fund the payments provided under the Plan.

6.1.3 <u>Plan Administrator.</u> The Postconfirmation Debtor shall be managed and conduct its affairs through a plan administrator ("Plan Administrator"), subject to the authority of the Disbursing Agent to control any payment of money    The initial Plan Administrator shall be Robert Rosenau, who shall be entitled to hourly compensation for his services as Plan Administrator at the rate of $40 per hour.  In the event Mr. Rosenau is unwilling or unable to serve as Plan Administrator, or, if for good cause shown the court orders that a different Plan Adminstrator be appointed, the Debtor or the Postconfirmation Debtor, as the case may be, or the Committee, shall file and serve a motion to approve the employment of a new Plan Administrator.  The Plan Administrator shall have all powers and duties as are necessary to implement the Plan and shall act as the sole member of the Postconfirmation Debtor's Board of Directors upon Court approval of the employment of the Plan Administrator.

6.1.4 <u>Disbursing Agent</u>.  Any and all payments made and all checks written after the Effective Date, including distributions under the Plan, shall require the signature of the Disbursing Agent.  The Disbursing  Agent shall be a (non-insider) person to be selected by the Plan Administrator and the Committee.  The Plan Administrator shall only have authority to write checks which bear the signature of the Plan Administrator and the Disbursing Agent.

6.1.5 <u>Compliance With Tax Requirements</u>:  In connection with the Plan, to the extent applicable, the Postconfirmation Debtor shall comply with all payroll tax and reporting requirements imposed on it by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to, and reduced by, such tax and reporting requirements.  The Postconfirmation Debtor shall be authorized to take any actions that may be necessary or appropriate in order to comply with such tax and

reporting requirements.  Notwithstanding any other provision of the Plan, each person or entity receiving a distribution of cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any Governmental Unit on account of such distribution, including income withholding and other tax obligations.

6.1.6 Approval of Transactions Outside the Ordinary Course of Business:  Subject to review by the Committee as set forth below, the Postconfirmation Debtor may enter into transactions outside the ordinary course of business, including without limitation, the transfer, sale or abandonment of assets or prosecution, litigation and the settlement of any Claims or causes of action, with the consent of the Committee.  The postconfirmation Debtor shall notify the Committee in writing (including by email), through counsel, of any proposed transaction outside the ordinary course of business, such as a sale, or the filing or settlement of a lawsuit.  If, within 14 days following such notification, the Committee approves of the transaction or does not object, the postconfirmation Debtor may proceed with the transaction.  If the Committee objects to a proposed transaction, the postconfirmation Debtor may enter into the transaction if it obtains a court order after noticed motion authorizing the transaction.

6.1.7 Post-Confirmation U.S. Trustee Quarterly Fees and Quarterly Reports:  The quarterly fees shall be paid by the Postconfirmation Debtor to the U.S. Trustee for each quarter (including any fraction thereof) and quarterly reports in the form required by the U.S. Trustee shall be filed by the Postconfirmation Debtor until the case is closed, converted, or dismissed.

6.1.8 Post-Confirmation Employment of Professionals:  To assist in the performance of the functions under this Plan, the Postconfirmation Debtor may employ professionals, including professionals to liquidate assets and a plan administrator, to the same extent as they could have been employed under the Code before confirmation of this Plan.  Court approval for employment shall not be required if the Court approved the professionals' employment before the Effective Date.  For professionals whose

employment was not authorized prior to confirmation, the Postconfirmation Debtor shall obtain Committee consent to their employment, or shall obtain a court order authorizing the employment.

6.1.9 <u>Post-Confirmation Compensation to Consultants</u>: The Postconfirmation Debtor is authorized to hire Consultants and pay reasonable compensation for post-confirmation services rendered. The names of such parties and specific terms of compensation will be approved by the Court upon noticed motion.

6.1.10 <u>Post-Confirmation Compensation</u>: All professionals properly employed by the Postconfirmation Debtor, including the Plan Administrator, shall be entitled to compensation for services rendered and reimbursement for costs incurred after the Effective Date which shall be paid and shall have a priority consistent with an Allowed Administrative Claim, subject to the procedures of this section. So long as the rate of compensation is disclosed in any employment application, the Postconfirmation Debtor shall pay compensation and expense reimbursement without the need for any additional notice or Court approval after compliance with the following procedures:

(a) Commencing for the first full month after the Effective Date of the Plan or as soon thereafter as practicable, and continuing each month thereafter, the Postconfirmation Debtor shall file with the Court and serve on the U.S. Trustee, Robert Rosenau, Fredrick Clement, the counsel for the Committee, the Plan Administrator, and the Disbursing Agent, and only if no Official Committee continues to exists, all parties who have requested special notice in the Case (collectively, the "Notice Parties"), an abbreviated notice of request for payment of compensation and reimbursement of expenses (the "Cover Sheet Application");

(b) The Cover Sheet Application may be filed and served any time after the end of the month for which compensation is sought but within 60 days of the end of the month for which compensation is sought;

(c) The Cover Sheet Application shall relate to services rendered and

expenses incurred during the prior period, shall indicate a description of the services rendered and costs incurred, the amount requested, the total time expended, the names of the professionals who performed the services, and the hourly billing rate for each professional;

(d) The Cover Sheet Application shall be accompanied by a detailed listing of the time expended by the professionals who performed the services and the costs incurred during the month, with any confidential or privileged information redacted;

(e) Any objection to the payment of fees or reimbursement of expenses in a Cover Sheet Application must describe the particular entry objected to, the nature of the objection, and the amount of fees or costs objected to, and filed with the Court and served on the Professional, the Postconfirmation Debtor, the Postconfirmation Debtor's counsel, and the Notice Parties within ten (10) calendar days of the date the Notice was mailed

(f) If no objection is timely filed and served, the Cover Sheet Application shall be deemed approved, and the Postconfirmation Debtor shall be authorized to make payment as requested therein; an

(g) If an objection is timely filed and served, then the Postconfirmation Debtor shall be authorized to make payment only of the appropriate percentage of those amounts that are not in dispute, unless and until the Court enters an order approving the requested compensation orexpenses.

6.2    Preservation and Assignment of Causes of Action:    As of the Effective Date, claims held by the Debtor or the Estate, whether arising under §§ 502, 506, 510, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552 or 553 of the Code, under non-bankruptcy law, or otherwise, relating to any dispute with secured creditors as

referenced on Exhibit 1, shall be deemed fully preserved and vested in the Postconfirmation Debtor. As of the Effective Date, claims held by the Debtor or the Estate, whether arising under §§ 502, 506, 510, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552 or 553 of the Code, under non-bankruptcy law, or otherwise, relating to (1) preference claims and avoidance claims, including preference claims referenced at paragraph 3(a) of the Debtor's Statement of Financial Affairs dated November 19, 2009 or as amended; (2) claims of any kind against Robert R. Rosenau, Robert E. Rosenau, and Donna Rosenau, or against affiliated entities or persons; or (3) claims relating to the RMD Services, LLC ("RMD") or its owner Ryan Nathan concerning management and collection of rent from the Debtor's Oakland properties, shall be deemed fully preserved and vested in the Committee, except to the extent that the Committee assigns such claims in writing to the postconfirmation Debtor. Confirmation of the Plan effects no settlement, compromise, waiver, or release of any cause of action unless the Plan or Confirmation Order so provides. The postconfirmation Debtor shall cooperate with and assist the Committee in the prosecution of any claims.

6.3 <u>Transfer of Office Equipment to Robert Rosenau for $1,000</u>. Prior to the conversion of the case from chapter 7 to chapter 11, Donna Rosenau paid chapter 7 trustee John Reger the sum of $1,000 for (1) office equipment, described on the Debtor's schedule B as 3 desks, 3 computers, 8 chairs, 3 printers, 1 combination printer/copier/fax machine, and valued at $800, and (2) inventory and supplies, valued at $200. Due in part to the conversion of the case, the transanction was not finalized. The chapter 7 trustee turned over the $1,000 in funds to the Debtor , who is now holding the funds. Upon the Effective Date, the postconfirmation Debtor shall transfer office equipment and supplies to Donna Rosenau.

6.4 <u>Abandonment of Assets</u>: The Postconfirmation Debtor hereby retains all assets of the Estate.

6.5 <u>Closing of Case</u>: At such point as the Court determines, upon noticed motion of the Postconfirmation Debtor or other party in interest, or otherwise, that all

pending Claims objections, contested matters and adversary proceedings have been resolved, or that the Case need not remain open despite pending objections, matters or proceedings, the Case may be closed by the terms of a final decree of the Court, provided that the Case will be reopened thereafter if necessary to facilitate any actions contemplated by the terms of the Plan. The fact that some or all of the distributions to Creditors remain to be made shall not, in and of itself, constitute grounds for keeping the Case open when the Postconfirmation Debtor or other party in interest requests that the Case be closed.

6.6     Certain Jurisdictional Limitations:  Any party in interest who believes that the conduct of the Postconfirmation Debtor, or professionals engaged by the Postconfirmation Debtor, is not consistent with the provisions of this Plan or believes that any Claims exist against the Postconfirmation Debtor or professionals working for the Postconfirmation Debtor for any conduct taken within the scope of its/his/her duties as Postconfirmation Debtor or as such professional, all such Claims, rights, requests for relief, or enforcement of this Plan must be filed in and determined by the Bankruptcy Court having jurisdiction over the Case.   No concurrent jurisdiction shall exist for the determination or enforcement of any such rights under or arising from this Plan, or Claims against the Postconfirmation Debtor or professionals retained by the Postconfirmation Debtor, in any other state, federal or foreign court.

6.7     Stay or Injunction in Aid of the Plan:  Except as otherwise provided in this Plan and until the Case is closed and the Plan is completed, all parties are stayed and enjoined from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Interest against the Debtor, the Debtor in Possession, the Debtor's Estate, the Postconfirmation Debtor, or properties or interests in properties of the Debtor, the Debtor in Possession, the Debtor's Estate, or the Postconfirmation Debtor; (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor, the Debtor in Possession, the Debtor's Estate, or the Postconfirmation Debtor, or properties or interests in properties of the Debtor, the Debtor in Possession, the Debtor's Estate, or the Postconfirmation Debtor;

1 (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the

2 Debtor in Possession, the Debtor's Estate, or the Postconfirmation Debtor; and (d) except

3 to the extent provided, permitted, or preserved by section 553 of the Bankruptcy Code or

4 pursuant to the common law right of recoupment, asserting any right of seoff, subrogation,

5 or recoupment of any kind against any obligation due from the Debtor, the Debtor in

6 Possession, the Debtor's Estate, or the Postconfirmation Debtor. Notwithstanding the

7 foregoing, nothing in this Plan grants the Debtor a discharge.

8      6.8    Exemption from Transfer Taxes: Pursuant to the provisions of

9 Section 1146(c) of the Code, the issuance, transfer or exchange of notes or equity

10 securities under the Plan, the creation of any mortgage, deed of trust or other security

11 interest, the making or assignment of any lease or sublease, the sale or other transfer of any

12 assets by the Postconfirmation Debtor to a third party, or the making or delivery of any

13 deed or other instrument of transfer under, in furtherance of, or in connection with the

14 Plan, including any deeds, bills of sale or assignments executed in connection with any of

15 the transactions contemplated under the Plan, shall not be subject to any stamp, transfer,

16 real estate transfer, mortgage recording, sales or other similar tax.

17                            ARTICLE 7
PROCEDURES RELATING TO CLAIMS AND INTERESTS
18

19      7.1    Pre-Petition, Unsecured Claims Bar Date: The deadline for filing

20 pre-petition, unsecured Claims was established by the Court as May 13, 2010, for

21 Creditors other than Governmental Units. For Governmental Units, the deadline was July

22 7, 2010.

23      7.2    Bar Date for Administrative Claims Incurred Before the Confirmation

24 Date: Holders of Administrative Claims arising before the Confirmation Date, including

25 those allowable under Code section 503 but excluding post-confirmation Claims of

26 Professionals, shall be forever barred from recovering from Debtor or the Estate on

27 account of such Claim unless within forty-five (45) days of service of notice of entry of the

28 Confirmation Order the holder of such Claim files with the Court a motion for allowance

1 of such Claim, including notice of the date and time for the hearing on the allowance of
2 such Claim.

3     7.3     Allowance of $50,000 Vasilakis Administrative Claim. Gus Vasilakis
4 shall hold an Allowed Administrative Claim in the amount of $50,000 pursuant to 11
5 U.S.C. § 503(b)(1)(A) and/or 503(b)(3)(D), as a result of his payment of that amount as a
6 retainer to Fredrick Clement to allow the case to be converted to chapter 11.

7     7.4     Disputed Claims or Interests:  The postconfirmation Debtor and the
8 Committee shall retain the authority to make and file with the court any objections to
9 Claims or Interests.  In the case of disputed Claims or Interests and unless the Court orders
10 otherwise for cause shown, reserves from each distribution shall be set aside for the holder
11 of each disputed Claim or Interest in an amount equal to what each disputed Claim or
12 Interest holder would have received had its Claim or Interest been allowed at the time of
13 the distribution, unless otherwise ordered by the Court under section 502(c).  When the
14 dispute over the Claim or Interest is resolved, the funds reserved for the disputed Claim or
15 Interest shall be paid if it is allowed and any funds reserved for the disputed Claim or
16 Interest, if disallowed, shall be re-distributed to the holders of Allowed Claims or Interests
17 of that class until paid in full.

18     7.5     Interim   Distributions:   Nothing   in   the   Plan   prohibits   the
19 Postconfirmation Debtor from seeking Court approval to make interim distributions to
20 holders of Claims, provided that sufficient funds exist to continue the implementation of
21 the Plan and to reserve for disputed Claims and all costs to be incurred in completing the
22 liquidation of assets and other duties under the Plan.

23     7.6     Claims Under Code § 502(h):  All Claims arising from judgments or
24 settlements in an action by the Estate for recovery of money or property must be filed
25 within thirty (30) days of the entry of such judgment or date of such settlement as required
26 by Rule 3002(c)(3) or will forever be barred and disallowed.

27     7.7     Unclaimed Distributions and Claim Waiver:  The Postconfirmation
28 Debtor may draw checks constituting payments due under this Plan so that such checks

1  will automatically become void if not presented to the payor bank for payment within 90

2  days after the date of the check.  Unless the Court for cause otherwise directs, if any such

3  check is properly mailed to the payee's last known address within twenty (20) days after

4  its date, and thereafter becomes void, the Claim with respect to which the check was issued

5  shall be deemed withdrawn and disallowed, and the holder shall be barred from seeking

6  further recovery on account of that Claim or Interest, and the unclaimed distribution shall

7  become available for distribution to known holders of Allowed.  <u>Provided</u>, however, if the

8  Postconfirmation Debtor later determines, in its sole discretion, that it is not economically

9  prudent to redistribute such unclaimed or returned funds, such funds shall be considered

10  and treated as unclaimed property under Code section 347(a).

11        7.8    <u>DeMinimis Distributions</u>:  Notwithstanding anything to the contrary

12  in this Plan, the Postconfirmation Debtor is not required to deliver a payment to the holder

13  of an Allowed Claim or Interest if the amount of cash due is less than $25.00.  The

14  Postconfirmation Debtor may round all amounts for distribution to the nearest whole

15  dollar.

16
                              ARTICLE 8
17                    EXECUTORY CONTRACTS AND LEASES

18        8.1    Except as otherwise provided in this Plan or other order of the Court

19  prior to Confirmation, all executory contracts and unexpired leases of the Debtor entered

20  into prior to the Petition Date which are not assumed or rejected pursuant to Code section

21  365 prior to the Confirmation Date shall be deemed rejected upon the Effective Date.

22  Each non-debtor party to an executory contract or unexpired lease rejected h ereunder shall

23  have thirty (30) days subsequent to the Effective Date to file a proof of Claim with the

24  Court asserting damages arising from such rejection.

25
       Upon the Effective Date, the following contracts, to the extent not fully performed
26
   prior to the Effective Date, and as such contracts are further described on the Debtor's
27
   Schedule G, shall be assumed:  (1) Steve Rizzo (Employment agreement – Steve Rizzo,
28

General Manager, Pepper Tree Inn-includes $10,000 bonus on sale of hotel); (2) Blue Gardner (landscape maintenance for the Pepper Tree Inn); (3) Eco Lab (Pest Control for Pepper Tree Inn); (4) Inn Quest (Room reservation system); (5) Hypapa Strebbe (Swimming Pool Contract); (6) Verizon California (Telephone and cable television service); (7) Heartland Leasing Services (Telephone systems for Pepper Tree Inn).

Upon the Effective Date, the following contracts, to the extent not fully performed prior to the Effective Date, and as such contracts are further described on the Debtor's Schedule G, shall be rejected: (1) George and Maxine Theobold (Lease of office space, located at 3404 Bechelli Lane, Suite C, Redding, California 96002); (2) Jeanette Guidici (Listing agreement for 17105 Marinas Way, Cottonwood, California); (3) Steve Pagones (Possible listing agreement for 1254 98th Street, Oakland, California; Possible listing agreement for 7832 Ney Avenue, Oakland, California; Possible listing agreement for 886 McElroy, Oakland, California); (4) RMD Services I, LLC (Property Management Agreement for 1784-1786 9th Street, 1620 17th Street, 886 McElroy, 1254 98th Avenue, 9429 Peach Street, and 7832 Ney Avenue (all located in Oakland); Sale contract for 7832 Ney Avenue, Oakland, California; Sale contract for 886 McElroy Street, Oakland, California; (5) Eula Johnson (Sale contract for 1254 98th Avenue, Oakland, California).

## ARTICLE 9
## EFFECT OF CONFIRMATION

9.1 <u>Revesting</u>: As of the Effective Date, and except as otherwise provided in the Plan, all property and rights of the Estate shall be revested in the Postconfirmation Debtor.

9.2 <u>Committee Continuation</u>: On and after the Effective Date, the Committee shall continue in existence and operate under its current by-laws with all powers and duties as set forth in the Bankruptcy Code, unless otherwise ordered by the Court upon noticed motion by any party in interest. So long as the Committee is in existence, the Debtor or the Postconfirmation Debtor, as the case may be, shall use all reasonable efforts to keep the Committee informed of the status of the Case.

## ARTICLE 10
## MODIFICATION OF PLAN

10.1    <u>Pre-Confirmation Modification</u>:    The Proponent may propose amendments or modifications of this Plan at any time prior to the Confirmation Date consistent with Code section 1127 and Rule 3019.

10.2    <u>Post-Confirmation Modification With No Materially Adverse Effect</u>: After the Confirmation Date, the Postconfirmation Debtor may, with approval of the Court but without further notice and so long as it does not materially, adversely affect the interest of Creditors or Interest holders, modify this Plan or remedy any defect or omission or reconcile any inconsistency in the Plan in such a manner as may be necessary to carry out the purpose and intent of this Plan.

10.3    <u>Post-Confirmation Material Modification</u>:  This Plan may be modified at any time after confirmation and before substantial consummation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Code, and the Court, after notice and a hearing, confirms such Plan, as modified, under section 1129 of the Code, and the circumstances warrant such modification.

## ARTICLE 11
## RETENTION OF JURISDICTION

11.1    <u>Retention of Jurisdiction</u>:    Until the Case has been closed, and thereafter upon a motion to reopen the Case, the Court shall have exclusive jurisdiction of all matters concerning the allowance of Claims and Interests, and the interpretation and implementation of the Plan, pursuant to, and for all purposes of, sections 105(a) and 1142 of the Code, including without limitation the following purposes:

(a)    to determine any and all Claims, causes of action, adversary proceedings, applications and contested matters which are pending on the Effective Date or which are thereafter commenced by or related to the Estate;

(b)    to hear and determine any objection to, or requests for estimation of, Administrative Expense Claims, Claims, or Interests;

1             (c)    to enter and implement such orders as may be appropriate in

2    the event that the Confirmation Order is for any reason stayed, revoked, modified, or

3    vacated;

4             (d)    to issue such orders in aid of execution of the Plan, to the

5    extent authorized by the provisions of section 1142 of the Code;

6             (e)    to consider any modifications of the Plan, to cure any defect or

7    omission, or reconcile any inconsistency in any order of the Court, including, without

8    limitation, the Confirmation Order;

9             (f)    to hear and determine all applications for Professional Fees

10   accrued through the Effective Date;

11            (g)    to hear and approve any motions to approve sales free and clear

12   of liens post-confirmation, to the extent such approval is required under this Plan;

13            (h)    to hear and determine disputes arising in connection with the

14   interpretation, implementation or enforcement of the Plan;

15   to hear and determine matters concerning state, local and federal taxes in accordance with

16   sections 346, 505 and 1146 of the Code; and

17            (i)    to enter a final decree closing the Case, and orders reopening

18   the Case as appropriate.

19

20

21

22

23   **Signatures on Following Page**

24

25

26

27

28

**PROPONENT:**

Dated: August 5, 2010        Rosenau Investments, Inc.


By_____
        Robert Rosenau, President

APPROVED AS TO FORM

By _____
Fredrick Clement
Attorneys for Rosenau Investments, Inc.

Exhibit 1 to Debtor's Plan of Reorganization Dated August 5, 2010:

**Classes and Treatment of Secured Creditors**

| Secured Creditors Class No. | Name and Address of Creditor | Description of Lien Claim; Treatment Unless otherwise stated, the treatment is as follows: To the extent not otherwise satisfied prior to the Effective Date of the Plan, the Allowed Secured Claim in each class shall be paid or otherwise satisfied in full by the Debtor from the sale proceeds of the collateral securing the obligation. Any deficiency shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Real Property Debtor either owns the real property, or owns a promissory note which is secured by a deed of trust against the real property described below. |
|---|---|---|---|
| 2.2.1 | City Of Oakland, Community & Economic Dev. Agency 250 Frank H. Ogawa Plaza, Room 2340 Oakland. CA 94812 | Disputed 2009 Invoice for Code Violations | 7832 Ney Ave. Oakland, CA |
| 2.2.2 | City Of Oakland CEDA Building Services 250 Frank H. Ogawa Pl., Rm 2340 Oakland, CA 94612 | Disputed Priority Lien and Special Assessment | 7832 Ney Avenue Oakland, CA |
| 2.2.3 | City of Oakland Mandatory Garbage Section 150 Frank H. Ogawa Pl., Suite 5342 Oakland, AC 94612 | Disputed 2009 Delinquent Refuse Service | 1250 98th Avenue |

**Exhibit 1 to Debtor's Plan of Reorganization Dated August 5, 2010:**

**Classes and Treatment of Secured Creditors**

| | | | |
|---|---|---|---|
| 2.2.4 | City of Oakland<br>Mandatory Garbage Section<br>150 Frank H. Ogawa Plz,<br>Suite 5342<br>Oakland, CA 94612 | Disputed 2009 Refuse Lien | 9425 Peach Street |
| 2.2.5 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Abatement Action | 946 61st Street, Oakland |
| 2.2.6 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Refuse Lien | 1620 17th Street |
| 2.2.7 | City of Oakland<br>Mandatory Garbage Section<br>150 Frank Ogawa Pl., Rm 2340<br>Oakland, Ca 94612 | Disputed 2009 Refuse Lien | 9425 Peach Street, Oakland |
| 2.2.8 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 200 Priority Lien | 946 61st Street, Oakland |

**Exhibit 1** to Debtor's Plan of Reorganization Dated August 5, 2010:

**Classes and Treatment of Secured Creditors**

| | | | |
|---|---|---|---|
| 2.2.9 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Abatement Proceeding | 946 61st Street, Oakland |
| 2.2.10 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2007 Prospective Lien and Special Assessment | 946 61st Street |
| 2.2.11 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2007 Priority Lien and Special Assessment | 946 61st Street |
| 2.2.12 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2006 Priority Lien and Special Assessment | 946 61st Street |
| 2.2.13 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2006 Priority Lien and Special Assessment | 946 61st Street |
| 2.2.14 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 946 61st Street |
| 2.2.15 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 1620 17th Street |

| | | | |
|---|---|---|---|
| 2.2.16 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 1620 17th Street |
| 2.2.17 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 1620 17th Street |
| 2.2.18 | City of Oakland<br>Mandatory Garbage Section<br>150 Frank H. Ogawa Pl., Suite 5342<br>Oakland, CA 94612 | Disputed 2009 Refuse Lien | 1620 17th Street |
| 2.2.19 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 1620 17th Street |
| 2.2.20 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 7832 Ney Avenue |
| 2.2.21 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 886 McElroy |
| 2.2.22 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 886 McElroy |

**Exhibit 1** to Debtor's Plan of Reorganization Dated August 5, 2010:

**Classes and Treatment of Secured Creditors**

| | | | |
|---|---|---|---|
| 2.2.23 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Refuse Lien | 1250 98th Avenue |
| 2.2.24 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien | 1427 Willow Street |
| 2.2.25 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Prospective Lien and Special Assessment | 1427 Willow Street |
| 2.2.26 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount: $5,770.45 2009 Property Tax | 1254 98th Avenue, Oakland, CA |
| 2.2.27 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount: $6,159.36 2009 Property Tax | 886 McElroy Street, Oakland, CA |
| 2.2.28 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount: $3,138.11 2008/2009 Ad Valorem Real Property Taxes | 1620 17th Street, Oakland, CA |
| 2.2.29 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount: $2.415.19 2008/2009 Ad Valorem Real Property Taxes | 1784 19th Street, Oakland , CA |

Exhibit 1 to Debtor's Plan of Reorganization Dated August 5, 2010:

## Classes and Treatment of Secured Creditors

| | | | |
|---|---|---|---|
| 2.2.30 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount:<br>$2,602.29  2008/2009 Ad<br>Valorem Real Property<br>Taxes | 946 61st Street,<br>Oakland, CA |
| 2.2.31 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount:<br>$10,076.84  2008/2009 Ad<br>Valorem Real Property<br>Taxes | |
| 2.2.32 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount:<br>$24,308.71 Unknown Ad<br>Valorem Real Property<br>Taxes | Ney Avenue |
| 2.2.34 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount:<br>$1,565.40 2008/2009 Ad<br>Valorem Real Property<br>Taxes | Willow Street,<br>Oakland |
| 2.2.35 | Gus Vasilakis & Kathleen<br>Valilakis<br>1985 Revocable Living Trust<br>7420 Danish Lane<br>Redding, CA 96002 | Scheduled Amount:<br>$148, 676.28<br>Deed of Trust | 9th Street, Oakland<br>CA |
| 2.2.36 | James T. Hull, Sr.<br>4617 Underwood Blvd.<br>Redding, CA 96003 | Scheduled Amount:<br>$57,000.00 2008 Remodel<br>Deed of Trust | 17105 Marianas<br>Way, Cottonwood,<br>CA |
| 2.2.37 | Leanne F. Weber<br>2530 Templeton Drive<br>Redding, Ca 96002 | Disputed 6/9/03<br>Temporary Protective<br>Order September 14, 2009<br>CCP 486.110;<br>Lien is terminated<br>pursuant to CCP §<br>493.030(b); Claim shall be<br>paid Pro Rata from the<br>same source as the | 9th Street, Oakland<br>CA |

Exhibit 1 to Debtor's Plan of Reorganization Dated August 5, 2010:

Classes and Treatment of Secured Creditors

| | | payments on Class 3B Claims. | |
|---|---|---|---|
| 2.2.38 | Leanne F. Weber 2530 Templeton Drive Redding, Ca 96002 | Disputed 12/9/03 Temporary Protective Order September 14, 2009 CCP 486.110. Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Pepper Tree Inn |
| 2.2.39 | Leanne F. Weber 2530 Templeton Drive Redding, Ca 96002 | Disputed 1/21/04 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 1427 Willow Street, Oakland CA |
| 2.2.40 | Leanne F. Weber 2530 Templeton Drive Redding, Ca 96002 | Disputed 6/1/07 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Buckeye Pines, Redding, CA |
| 2.2.41 | Leanne F. Weber 2530 Templeton Drive Redding, Ca 96002 | Disputed 6/1/07 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim | 4550 & 4580 Cedars Road, Redding, CA |

| | | | |
|---|---|---|---|
| | | shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | |
| 2.2.42 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 6/3/03 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 1784 9th Street Oakland, CA |
| 2.2.43 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 7/7/05 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Oakdale Avenue Lots, Oakland, CA |
| 2.2.44 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed Date Unknown Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 1427 Willow Street, Oakland, CA |
| 2.2.45 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 2/1/06 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B | Pepper Tree Inn |

|  |  | Claims. |  |
|---|---|---|---|
| 2.2.46 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 3/16/06; Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 772-774 Lake Blvd, Redding, CA |
| 2.2.47 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed Date Unknown Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 886 McElroy Street, Oakland, CA |
| 2.2.48 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 2/1/08 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 17105 Marianas Way, Cottonwood, CA |

**Exhibit 1** to Debtor's Plan of Reorganization Dated August 5, 2010:

**Classes and Treatment of Secured Creditors**

| | | | |
|---|---|---|---|
| 2.2.49 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 12/1/06 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Oakdale Avenue Lots, Oakland, CA |
| 2.2.50 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 4/17/07 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 9425 Peach Street, Oakland, CA |
| 2.2.51 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 7/18/07 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 7832 Ney Avenue, Oakland, CA |
| 2.2.52 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 7/23/07 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Buckeye Pines, Redding, CA |

**Exhibit 1** to Debtor's Plan of Reorganization Dated August 5, 2010:

**Classes and Treatment of Secured Creditors**

| 2.2.53 | Nicodemus Family 2006 Trust Rex & Jill Nicodemus, Trustees 855 Boulder Lane Lincoln, CA 95648 | Disputed 7/12/04 TPO Writ of Attachment; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Buckeye Pines, Redding, CA |
|---|---|---|---|
| 2.2.54 | Nicodemus Family 2006 Trust Rex & Jill Nicodemus, Trustees 855 Boulder Lane Lincoln, CA 95648 | Disputed 10/12/04 TPO Writ of Attachment; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 946- 61st Street, Oakland, CA |
| 2.2.55 | Nicodemus Family 2006 Trust Rex & Jill Nicodemus, Trustees 855 Boulder Lane Lincoln, CA 95648 | Disputed 6/1/07 TPO Writ of Attach. Lien is subject of litigation (Shasta County Superior Court Case No. 166108. To the extent not otherwise satisfied prior to the Effective Date of the Plan, to the extent that the lien of this class is Allowed it shall be paid or otherwise satisfied in full by the Debtor from the sale proceeds of the collateral securing the obligation. Any deficiency shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Promissory Note Secured by 4550 & 4580 Cedars Road, Redding, Ca |
| 2.2.56 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |

**Exhibit 1** to Debtor's Plan of Reorganization Dated August 5, 2010:

**Classes and Treatment of Secured Creditors**

| 2.2.57 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$1,189.06 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |
|--------|---------------------------------------------------------------------------|------------------------------------------------------------|------------------------------|
| 2.2.58 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$1,189.06 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |
| 2.2.59 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$1,189.06 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |
| 2.2.60 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$1,189.06 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |
| 2.2.61 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$1,189.06 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |
| 2.2.62 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$1,201.58 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |
| 2.2.63 | Shasta County Tax Collector<br>P.O. Box 991830<br>Redding, CA 96099-1830 | Scheduled Amount:<br>$1,201.58 2008-2009<br>Property Taxes | Buckeye Pines<br>Subdivision |

**Exhibit 1 to Debtor's Plan of Reorganization Dated August 5, 2010:**

**Classes and Treatment of Secured Creditors**

| 2.2.64 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,201.58 2008-2009 Property Taxes | Buckeye Pines Subdivision |
|--------|------------------------------------------------------------------|-----------------------------------------------------|---------------------------|
| 2.2.65 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |
| 2.2.66 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $2,809.13 2008-2009 Property Taxes | Buckeye Pines Subdivision |
| 2.2.67 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |
| 2.2.68 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |
| 2.2.69 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |
| 2.2.70 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |

**Exhibit 1** to Debtor's Plan of Reorganization Dated August 5, 2010:

**Classes and Treatment of Secured Creditors**

| 2.2.71 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |
|---|---|---|---|
| 2.2.72 | Weber Family Trust William Weber & Leanne Weber, Trustees 2530 Templeton Drive Redding, CA 96002 | Disputed 3/29/07 TPO Writ of Attachment; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 6016 Alisal Street, Pleasanton, CA |
| 2.2.73 | Other Secured Claims. This Class consists of any other Secured Claims against the Debtor other than those in Classes 2.1 to 2.72 | Any other Secured Claims other than those in Classes 2.2.1 through 2.2.72 shall retain their liens securing the Claims and shall receive deferred cash payments totaling at least the allowed amount of their Claims, of a value, as of the Effective Date of the Plan, of at least the value of each claimant's interest in the collateral as required under section 1129(b)(2) of the Code; provided however, that the Proponents reserve the right to require each claimant to remove, at its own cost and peril and without damage to any property of the Estate, and at a time mutually convenient to such holder and the Debtor, such property as to which such holder holds a perfected security interest. Such holder may file and assert a Claim within Class 3A | Not determined |

| | | or 3B for any deficiency resulting from such abandonment and return of collateral, provided that a proof of claim therefor is filed with the Court and served upon the Debtor within thirty (30) days following the Effective Date. The Debtor does not believe there are any holders of Class 2.73 Secured Claims | |