2009-42219
FILED
December 28, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003135509

**Fredrick E. Clement**
Attorney at Law
1300 West Street, Suite C
Redding, CA 96001
(530) 229-3900
Email: fredrick@fredrickclementlaw.com
State Bar No. 132520

Attorney for Debtor in Possession Rosenau Investments, Inc.

IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re:                                                    Case No. 2009-42219

Rosenau Investments, Inc.

                          Debtor(s).

**Order Confirming Plan, filed August 5, 2010**

Fredrick E.
Clement,
Attorney at
Law
1300 West St.,
S
R
9
(

RECEIVED
December 10, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003135509

rming Chapter 11 Plan

1

The plan under Chapter 11 of the Bankruptcy Code filed by Rosenau Investments, Inc. on August 5, 2010, having been transmitted to creditors and equity security holders; and

It having been determined after hearing on notice that the requirements for confirmation set forth in 11 U.S.C. §1129(b) have been satisfied;

It is ordered that:

1. The objections to the plan filed by Rex J. Nicodemus and Jill L. Nicodemus, individually and as trustees of the Nicodemus Family Trust dated January 13, 2006, are overruled.

2. The plan filed by Rosenau Investments, Inc., on August 5, 2010, a copy of which is attached hereto, is confirmed.

3. The provisions of Section 6.7 ('Stay or Injunction in Aid of the Plan") of the Plan, shall not be construed to limit or alter the scope of the relief granted to creditors Rex J. Nicodemus and Jill L. Nicodemus, individually and as trustees of the Nicodemus Family Trust dated January 13, 2006, by order filed September 22, 2010 (Dkt. 563);

4. Pursuant to Section 6.1.2 of the Plan, all of the Debtor in Possession, Rosenau Investments, Inc.'s accounts (including but not limited to Wells Fargo Bank Account Numbers 5994130812, 5994130572, 2655681696, 2655681704, 5994130978, 5994130986, 5994130960, 5994130952, 5994130945, 5994130937, 5994130739, 8608677426, 5994130804, 5994130796, 1890758517, 5994131000, 5994130721, 5994130788, 5994130689, 5994130697, 5994130754, 1890758970, 5994130994, 5994131018, 5994130598, 1890758988, 5994130671, 5994130713, 1890758996, 5994130747, 5994131000, 8098020855, 8098020897, and 8098020921) are unblocked and may be accessed by Debtor in Possession Rosenau Investments, Inc. and Rosenau Investments, Inc.; and

5. Pursuant to Section 1123(a)(6), the Debtor shall not issue non-voting equity securities.

///
///
///
///
///

1    6.    Pursuant to Section 6.1.2 of the Plan, the Disbursing Agent is Mark Gunlogson.

2    Dated:  December 28, 2010

3

4

5                                          Thomas C. Holman
6                                          United States Bankruptcy Judge

7    Approved as to form:

8

9    Thomas R Phinney    12/10/10
10   Parkinson Phinney
     By: Thomas Phinney
11   Attorney for the Unsecured Creditors Committee

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

FILED
August 05, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002832729

Fredrick E. Clement, State Bar No. 132520
Attorney at Law
1300 West Street, Suite C
Redding, CA 96001
(530) 229-3900
Email: fredrick@fredrickclementlaw.com

Attorneys for Debtor and Debtor in Possession
Rosenau Investments, Inc.

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re | ) Case No.: 09-42219 |
| ROSENAU INVESTMENTS, INC. | ) |
|     Debtor. | ) |
| | ) |
| | ) |
| | ) |

**CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY DEBTOR**
**Dated August 5, 2010**

    Chapter 11 debtor and debtor in possession Rosenau Investments, Inc., for the Chapter 11 bankruptcy case of debtor and debtor in possession, Rosenau Investments, Inc. (the "Debtor") hereby propose the following plan of liquidation (the "Plan") pursuant to Bankruptcy Code section 1121. The Plan is designed to complete the orderly liquidation of the Debtor's assets and to distribute the proceeds consistent with the requirements of the Bankruptcy Code and orders of the Bankruptcy Court previously entered in the Case.

    The Debtor, in consultation with the Official Committee of Unsecured Creditors (the "Committee") Committee, has prepared and filed a Disclosure Statement, of which the Debtor is requesting Bankruptcy Court approval. The Disclosure Statement accompanies this Plan. Please refer to the Disclosure Statement for a discussion of the Debtor's history, business, and post-petition developments, and for a summary and analysis of the Plan. All Creditors and parties in interest should consult the Disclosure Statement before voting to

accept or reject the Plan.

## ARTICLE 1
## DEFINITIONS

The following terms used in the Plan and the Disclosure Statement and shall, unless the context otherwise requires, have the meanings specified below:

1.1    Administrative Claim:  Any cost, Claim or expense of administration of the Chapter 11 Case arising before the Effective Date approved by the Court and entitled to priority in accordance with the provisions of sections 503(b) and 507(a)(1) of the Code, including, without limitation, (a) all actual and necessary expenses of preserving the Estate, to the extent approved by the Court, (b) Professional Claims and all other allowances of compensation or reimbursement of expenses of Professional Persons to the extent approved by the Court, and (c) all reasonable, necessary and actual costs and expenses of members of the Committee to the extent approved by the Court.

1.2    Allowed Claim:  Any Claim against the Debtor or the Estate, provided: (a) proof of which was timely and properly filed or, if no proof of Claim was filed, which has been or hereafter is scheduled as liquidated in amount and not disputed or contingent, and (b) in either such case, a Claim as to which no timely objection to the allowance thereof has been made, or to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the holder of the Claim.

1.3    Allowed Interest:  Any Interest in the Debtor provided: (a) proof of which was timely and properly filed or, if no proof of interest was filed, which is deemed filed pursuant to the Code or this Plan, or (b) such Interest is listed with Debtor's transfer agent on the Record Date, and (c) in either such case, an Interest to which no timely objection to the allowance thereof has been made or to which any objection has been determined by a Final Order to the extent such objection was determined in favor of a person or entity asserting an Interest.

1.4    <u>Ballot</u>: The form distributed to each holder of an impaired Claim or Interest on which such holder is to indicate acceptance or rejection of the Plan, among other things.

1.5    <u>Business Day</u>: Any day on which banks are open to carry on their ordinary commercial banking business in Sacramento, California.

1.6    <u>Cash Collateral</u>: All funds of the Estate to which attaches a lien in favor of a Secured Creditor.

1.7    <u>Case</u>: Case no. 09-42219 pending before this Court.

1.8    <u>Claim</u>: Any right to payment from the Debtor or the Estate that arose on or before the Confirmation Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor or the Estate whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.9    <u>Code</u>: The Bankruptcy Reform Act of 1978, 11 U.S.C. §101 <u>et</u>. <u>seq</u>., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, and as further amended from time to time.

1.10    <u>Committee</u>: The Official Committee of Unsecured Creditors appointed in the Debtor Case pursuant to the provisions of section 1102 of the Code, by the Office of the United States Trustee ("U.S. Trustee").

1.11    <u>Confirmation Date</u>: The date of entry of the Confirmation Order in accordance with the provisions of the Code.

1.12    <u>Confirmation Order</u>: The order of the Court confirming the Plan under Code section 1129.

1.13    <u>Court</u>: The United States Bankruptcy Court for the Eastern District of California, Sacramento Division, including the United States Bankruptcy Judge presiding in this case.

1.14  Creditor: A person that is the holder of a Claim against the Debtor that arose on or before the Confirmation Date, or a Claim against the Debtor's Estate of any kind specified in sections 502(g), 502(h) or 502(i) of the Code.

1.15  Debtor: Rosenau Investments, Inc.

1.16  Debtor Case: Case No. 09-42219 of Rosenau Investments, Inc.

1.17  Disclosure Statement: That certain disclosure statement approved in the Case accompanying the Plan.

1.18  Effective Date: The first Business Day occurring on or after the twenty-first(21st) day following the Confirmation Date; provided, however, that if a stay of the Confirmation Order is in effect on such first Business Day, then the Effective Date shall be the first Business Day thereafter on which (a) no stay of the Confirmation Order is in effect and (b) the Confirmation Order has not been vacated.

1.19  Estate: The Estate created in the Case under Code section 541.

1.20  Final Order: An order or a judgment of a court of competent jurisdiction which (a) has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek review or rehearing has expired and as to which any right to appeal, reargue, petition for a certiorari or rehearing has been waived in a manner satisfactory to the Debtor, as a result of which such order shall have become final in accordance with applicable law, or (b) if an appeal, reargument, certiorari or rehearing thereof has been sought, the order of the lower court has been affirmed by the higher court to which the order was appealed or from which the reargument or rehearing was sought or certiorari has been denied, and time to take further appeal or to seek certiorari or further reargument or rehearing has expired.

1.21  Governmental Unit: This term shall have the same meaning as described at 11 U.S.C. § 101(27).

1.22  Interest: An equity security as defined in section 101(16) of the Code including, without limitation, the rights of each shareholder of the Debtor.

1.23    Petition Date: October 13, 2009, the date on which the Debtor filed its petition for relief commencing the Case.

1.24    Plan: This Joint Plan of Reorganization proposed by the Debtor and the Committee, either in its present form or as it may be amended or modified from time to time.

1.25    Postconfirmation Debtor: The Debtor on and after the Effective Date of the Plan.

1.26    Pre-Petition Tax Claims: Allowed Claims of Governmental Units entitled to priority under Code sections 502(i) and 507(a)(8).

1.27    Priority Claims: Allowed Claims entitled to priority under sections 507(a) of the Code, except Administrative Claims and Pre-Petition Tax Claims.

1.28    Professional Claims: Claims of all Professional Persons employed by the Debtor or the Committee.

1.29    Professional Persons: Persons retained or to be compensated pursuant to sections 326, 327, 328, 330, 503(b) and 1103 of the Code.

1.30    Proponent: The Debtor.

1.31    Pro Rata: The proportion that the amount of a Claim or Interest in a particular class bears to the aggregate amount of all Claims or Interests which are entitled to a particular distribution (including undetermined Claims or Interests until disallowed) in such class.

1.32    Record Date: The date or dates established by the Bankruptcy Court for the purpose of determining the holders of Allowed Interests entitled to receive distributions pursuant to the Plan.

1.33    Robert Rosenau: Robert R. Rosenau, sometimes referred to as Rosenau, Sr.

1.34    Rules: The Federal Rules of Bankruptcy Procedure and Interim Rules of Bankruptcy Procedure applicable to the Case, as amended.

1.35   Secured Claim:  An Allowed Claim held by any entity to the extent of the value, as set forth in the Plan, as determined by Final Order of the Court pursuant to section 506(a) of the Code, or as agreed upon by such entity and the Debtor of any duly perfected interest in property of the Estate validly and enforceably securing such Allowed Claim.

1.36   Unsecured Claim:  Any Claim that is not an Administrative Claim, a Secured Claim, or a Priority Claim.

1.37   Unencumbered Assets:  All assets of the Estate on the Effective Date, which are not subject to a Secured Claim.

The words "herein," "hereof" and "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.  Where not inconsistent or in conflict with the provisions of the Plan, the words and phrases used herein shall have the meanings ascribed thereto in the Code and in the Rules.  To the extent of any inconsistencies between the Plan and the Disclosure Statement, the terms of the Plan control.

ARTICLE 2
CLASSIFICATION OF CLAIMS AND INTERESTS

2.1   Class 1 (Priority):  Allowed Claims entitled to priority pursuant to section 507(a) of the Code, except Administrative Claims and Pre-Petition Tax Claims, as follows:

2.1.1   Class 1A (Wages):  Class 1A consists of all Allowed Claims of current or former employees of the Debtor for wages, salaries or commissions, including vacation, severance, and sick leave pay earned by such employee within 180 days of the Petition Date and up to $10,950 for each individual as provided in section 507(a)(4), and Allowed Claims for contributions to any employee benefit plan as provided in section 507(a)(5).  The Debtor believes that the only unpaid priority wage claim is in favor of Robert R. Rosenau in the amount of $8,166.67.

2.1.2   <u>Class 1B (Other Priority Claims)</u>:   Class 1B consists of all other Allowed Claims against the Debtor entitled to the treatment specified in section 1129(a)(9), except Administrative Claims, Professional Claims, and Pre-Petition Tax Claims.

2.2   <u>Class 2 (Secured)</u>:  All Allowed Secured Claims as follows:

2.2.1 through 2.2.73 (Secured Claims).  Attached hereto as <u>Exhibit 1</u> is a chart that classifies secured claims.  The chart also describes the treatment of each secured creditor, as further addressed in Article 4 of the Plan.

2.3   <u>Class 3 (General Unsecured)</u>:   All holders of Allowed Unsecured Claims as follows:

2.3.1   <u>Class 3A (Convenience Class)</u>:   Class 3A consists of any Allowed Unsecured Claim against the Debtor equal to or less than $500, or with respect to such Claim the holder thereof voluntarily reduces the Claim to $500 on the Ballot.

2.3.2   <u>Class 3B (General Unsecured)</u>:   Class 3B consists of all Allowed Claims of general unsecured Creditors that do not elect the treatment in Class 3A against the Debtor of whatever nature or description, including, without limitation, Claims arising from unsecured promissory notes, Claims arising from the rejection of executory contracts or unexpired leases, and Claims arising from recovery of money or property from the claimant under Code section 502(h).  Class 3 Claims shall not include interest subsequent to the Petition Date, except as provided in section 4.3.2 of this Plan.

2.4   <u>Class 4 (Shareholders)</u>:   All holders of Allowed Interests in the Debtor.  The sole shareholder of the Debtor is Robert R. Rosenau, who will not receive anything under the Plan on account of his Interest.

ARTICLE 3
SPECIFICATION AND TREATMENT OF UNCLASSIFIED CLAIMS

3.1   Other than the Professional Claims, each Administrative Claim against the Debtor or its Estate shall be paid in full as soon as practicable after the entry of an order of the Court approving such Administrative Claim or on the Effective Date,

whichever is later, unless different treatment is agreed to between the claimant and the Debtor; provided however, that the Postconfirmation Debtor is hereby authorized to pay any and all operating expenses, including professional fees, in the ordinary course of business without Court approval, as further set forth in this Plan. Except as may be expressly set forth in the Plan or by an order of the Court, no holder of an Administrative Claim shall be entitled to payment on account of any post-petition interest or penalties arising with respect to such Administrative Claim.

3.2 To the extent any Professional Person holds a Professional Claim against the Debtor or any one of them for services rendered prior to the Effective Date of the Plan, such Professional Person shall be paid in full upon Court approval pursuant to the terms of the applicable employment order.

3.3 Allowed Pre-Petition Tax Claims shall be paid in full on the Effective Date of the Plan or accordance with sections 1129(a)(9)(C) and (D).

3.4 All fees payable by the Debtor through the Confirmation Date under 28 U.S.C. §1930 shall be paid in full on the Effective Date or as soon thereafter as they may come due in the ordinary course.

ARTICLE 4
TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

4.1 Class 1 (Priority Claims):

4.1.1 Class 1A (Wages): The holder of each Allowed Class 1A Claim shall be paid the Allowed amount of their Priority Claim in the amount required under section 507(a)(4) and section 507(a)(5) in cash on the Effective, except to the extent that the holder of a particular Claim has agreed otherwise.

4.1.2 Class 1B (Other Priority Claims): Any Allowed Priority Claims not otherwise included in Class 1A shall be paid the Allowed amount thereof in cash on the Effective Date, except to the extent that the holder of a particular Claim has agreed otherwise.

4.2 Class 2 (Secured Claims):

1                Class 2.1 through 2.72: Attached hereto as Exhibit 1 is a chart that

2 classifies secured claims. The chart also describes the treatment of each secured creditor.

3 Generally, all secured claims to the extent Allowed and not otherwise satisfied prior to the

4 Effective Date of the Plan, shall be paid or otherwise satisfied in full by the Debtor from

5 the sale proceeds of the collateral securing the obligation. Any deficiency shall be paid

6 Pro Rata from the same source as the payments on Class 3B Claims.

7                Class 2.73 (Other Secured Claims): Any other Secured Claims other

8 than those in Classes 2.1 to 2.72 shall retain their liens securing the Claims and shall

9 receive deferred cash payments totaling at least the allowed amount of their Claims, of a

10 value, as of the Effective Date of the Plan, of at least the value of each claimant's interest

11 in the collateral as required under section 1129(b)(2) of the Code; provided however, that

12 the Proponent reserves the right to require each claimant to remove, at its own cost and

13 peril and without damage to any property of the Estate, and at a time mutually convenient

14 to such holder and the Debtor, such collateral. Such holder may file and assert a Claim

15 within Class 3A or 3B for any deficiency resulting from such abandonment and return of

16 collateral, provided that a proof of claim therefor is filed with the Court and served upon

17 the Debtor within thirty (30) days following the Effective Date. The Debtor does not

18 believe there are any holders of Class 2.73 Secured Claims

19             4.2.1   Class 3 (Unsecured Claims):

20             4.3.1   Class 3A (Convenience Class):   Any Allowed Unsecured

21 Claim against the Debtor equal to or less than $500, or with respect to such Claim the

22 holder thereof voluntarily reduces the Claim to $500 on the Ballot, shall be paid the

23 Allowed or reduced amount thereof, whichever amount is lower, in cash on the Effective

24 Date or as soon thereafter as is practicable, except to the extent that the holder of a

25 particular Claim has agreed otherwise.

26             4.3.2   Class 3B (General Unsecured Claims):   All Allowed

27 Unsecured Claims within Class 3B shall be paid or otherwise satisfied from any

28 Unencumbered Funds from the sale proceeds of the Debtor's assets after all payment in

full, or reservation for payment in full, of all Administrative Claims, Priority Claims, Pre-Petition Tax Claims, Professional Claims, and Class 1 Claims, and after payment or reservation of sufficient funds to pay for all post-confirmation liquidation expenses. In the event there are sufficient Unencumbered Funds to do so, Class 3B claimants shall be entitled to interest at the legal rate as of the Effective Date on their Allowed Unsecured Claims from the Petition Date until paid in full. In the event there are insufficient Unencumbered Funds to pay all Allowed Unsecured Claims in full (which is almost certain to be the case), the holders of Allowed Unsecured Claims in Class 3B shall be paid on a Pro Rata basis. In no event shall any holder of an Allowed Unsecured Class 3B Claim receive more than the full amount of its Allowed Unsecured Claim.

        4.3.3 <u>Class 4 (Shareholders)</u>: To the extent there are funds available after all Administrative and Pre-Petition Tax Claims and Class 1 Claims are paid in full, after the Class 21 through 2.73 Secured Claims are paid in full from the collateral securing their respective Claims, and after payment in full with interest of all Class 3A and 3B Allowed Unsecured Claims, and all actual or projected post-confirmation liquidation expenses have been paid in full or reserved for payment in full, all such residual amounts shall be paid Pro Rata to the holders of Allowed Interests in Class 4A. No payment is anticipated.

ARTICLE 5
<u>UNIMPAIRED AND IMPAIRED CLASSES</u>

        5.1 Classes 1A and 1B, Classes 2.2.1 through 2.2.36, 2.2.56 through 2.2.71, Class 3Aare unimpaired under this Plan, are deemed to accept the Plan and are not entitled to vote.

        5.2 Classes 2.2.37 through 2.2.55 and 2.2.72 through 2.2.73 3B and 4A are impaired under this Plan.

        5.3 Classes, if any, that have already been paid in full postpetition shall receive nothing under the Plan, are deemed to accept the Plan, and are not entitled to vote.

## ARTICLE 6
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

6.1    Liquidation of Assets:  All of the Debtor's assets are hereby vested in the Postconfirmation Debtor for purposes of payment of Allowed Claims under the Plan, and payment of expenses arising after the Effective Date.  The Postconfirmation Debtor, acting through a Plan Administrator, shall continue to liquidate assets of the Estate in a prudent and businesslike manner after the Effective Date.  Such liquidation may include, without limitation, (a) sale of assets of the Debtor, or (b) distribution of property to those having an interest in the property.  On the Effective Date or as soon thereafter as practicable, the Postconfirmation Debtor shall make the payments or reserve sufficient funds to make such payments in the future, that are required under this Plan by Article 3 (unclassified Claims) and to Classes 1A and 1B, as well as sufficient funds to make payments in the future that may be required for payment of post-confirmation liquidation expenses. Except as otherwise provided in paragraph 6.6 herein, the Postconfirmation Debtor is authorized to pay any and all post-confirmation liquidation expenses without further order of the Court.

6.1.1    Postconfirmation Debtor Administration, Powers and Duties: The Postconfirmation Debtor shall have such powers as are set forth in this Plan and the Confirmation Order and which are necessary to the proper performance of its duties as set forth in this Plan.  In addition, the Committee shall continue to be authorized to serve postconfirmation and shall be entitled to exercise the rights of a Committee serving in a Chapter 11 case pursuant to the Code.  In addition, except as otherwise provided in the Plan, the Postconfirmation Debtor shall retain post-confirmation all rights of a trustee serving as a Chapter 11 trustee pursuant to the Code.  Without limiting the foregoing, the Postconfirmation Debtor may continue any operations of the business that in its discretion enhance the value of the assets and/or maximize the opportunities to liquidate the assets, including without limitation the Debtor's real properties, the Debtor's promissory notes, and any other assets of the Estate.

6.1.2 <u>Unblocking of Sale Proceeds</u>. All cash proceeds from the sale of assets pursuant to 11 U.S.C. § 363, which prior to confirmation were held in blocked accounts pursuant to LBR 5008-1(b), upon the Effective Date shall be unblocked and may be used by the Plan Administrator to fund the payments provided under the Plan.

6.1.3 <u>Plan Administrator.</u> The Postconfirmation Debtor shall be managed and conduct its affairs through a plan administrator ("Plan Administrator"), subject to the authority of the Disbursing Agent to control any payment of money    The initial Plan Administrator shall be Robert Rosenau, who shall be entitled to hourly compensation for his services as Plan Administrator at the rate of $40 per hour.  In the event Mr. Rosenau is unwilling or unable to serve as Plan Administrator, or, if for good cause shown the court orders that a different Plan Adminstrator be appointed, the Debtor or the Postconfirmation Debtor, as the case may be, or the Committee, shall file and serve a motion to approve the employment of a new Plan Administrator. The Plan Administrator shall have all powers and duties as are necessary to implement the Plan and shall act as the sole member of the Postconfirmation Debtor's Board of Directors upon Court approval of the employment of the Plan Administrator.

6.1.4 <u>Disbursing Agent</u>. Any and all payments made and all checks written after the Effective Date, including distributions under the Plan, shall require the signature of the Disbursing Agent.  The Disbursing  Agent shall be a (non-insider) person to be selected by the Plan Administrator and the Committee.  The Plan Administrator shall only have authority to write checks which bear the signature of the Plan Administrator and the Disbursing Agent.

6.1.5 <u>Compliance With Tax Requirements</u>: In connection with the Plan, to the extent applicable, the Postconfirmation Debtor shall comply with all payroll tax and reporting requirements imposed on it by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to, and reduced by, such tax and reporting requirements.  The Postconfirmation Debtor shall be authorized to take any actions that may be necessary or appropriate in order to comply with such tax and

reporting requirements. Notwithstanding any other provision of the Plan, each person or entity receiving a distribution of cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any Governmental Unit on account of such distribution, including income withholding and other tax obligations.

6.1.6 <u>Approval of Transactions Outside the Ordinary Course of Business</u>: Subject to review by the Committee as set forth below, the Postconfirmation Debtor may enter into transactions outside the ordinary course of business, including without limitation, the transfer, sale or abandonment of assets or prosecution, litigation and the settlement of any Claims or causes of action, with the consent of the Committee. The postconfirmation Debtor shall notify the Committee in writing (including by email), through counsel, of any proposed transaction outside the ordinary course of business, such as a sale, or the filing or settlement of a lawsuit. If, within 14 days following such notification, the Committee approves of the transaction or does not object, the postconfirmation Debtor may proceed with the transaction. If the Committee objects to a proposed transaction, the postconfirmation Debtor may enter into the transaction if it obtains a court order after noticed motion authorizing the transaction.

6.1.7 <u>Post-Confirmation U.S. Trustee Quarterly Fees and Quarterly Reports</u>: The quarterly fees shall be paid by the Postconfirmation Debtor to the U.S. Trustee for each quarter (including any fraction thereof) and quarterly reports in the form required by the U.S. Trustee shall be filed by the Postconfirmation Debtor until the case is closed, converted, or dismissed.

6.1.8 <u>Post-Confirmation Employment of Professionals</u>: To assist in the performance of the functions under this Plan, the Postconfirmation Debtor may employ professionals, including professionals to liquidate assets and a plan administrator, to the same extent as they could have been employed under the Code before confirmation of this Plan. Court approval for employment shall not be required if the Court approved the professionals' employment before the Effective Date. For professionals whose

employment was not authorized prior to confirmation, the Postconfirmation Debtor shall obtain Committee consent to their employment, or shall obtain a court order authorizing the employment.

6.1.9 <u>Post-Confirmation Compensation to Consultants</u>: The Postconfirmation Debtor is authorized to hire Consultants and pay reasonable compensation for post-confirmation services rendered. The names of such parties and specific terms of compensation will be approved by the Court upon noticed motion.

6.1.10 <u>Post-Confirmation Compensation</u>: All professionals properly employed by the Postconfirmation Debtor, including the Plan Administrator, shall be entitled to compensation for services rendered and reimbursement for costs incurred after the Effective Date which shall be paid and shall have a priority consistent with an Allowed Administrative Claim, subject to the procedures of this section. So long as the rate of compensation is disclosed in any employment application, the Postconfirmation Debtor shall pay compensation and expense reimbursement without the need for any additional notice or Court approval after compliance with the following procedures:

(a) Commencing for the first full month after the Effective Date of the Plan or as soon thereafter as practicable, and continuing each month thereafter, the Postconfirmation Debtor shall file with the Court and serve on the U.S. Trustee, Robert Rosenau, Fredrick Clement, the counsel for the Committee, the Plan Administrator, and the Disbursing Agent, and only if no Official Committee continues to exists, all parties who have requested special notice in the Case (collectively, the "Notice Parties"), an abbreviated notice of request for payment of compensation and reimbursement of expenses (the "Cover Sheet Application");

(b) The Cover Sheet Application may be filed and served any time after the end of the month for which compensation is sought but within 60 days of the end of the month for which compensation is sought;

(c) The Cover Sheet Application shall relate to services rendered and

expenses incurred during the prior period, shall indicate a description of the services rendered and costs incurred, the amount requested, the total time expended, the names of the professionals who performed the services, and the hourly billing rate for each professional;

(d) The Cover Sheet Application shall be accompanied by a detailed listing of the time expended by the professionals who performed the services and the costs incurred during the month, with any confidential or privileged information redacted;

(e) Any objection to the payment of fees or reimbursement of expenses in a Cover Sheet Application must describe the particular entry objected to, the nature of the objection, and the amount of fees or costs objected to, and filed with the Court and served on the Professional, the Postconfirmation Debtor, the Postconfirmation Debtor's counsel, and the Notice Parties within ten (10) calendar days of the date the Notice was mailed

(f) If no objection is timely filed and served, the Cover Sheet Application shall be deemed approved, and the Postconfirmation Debtor shall be authorized to make payment as requested therein; an

(g) If an objection is timely filed and served, then the Postconfirmation Debtor shall be authorized to make payment only of the appropriate percentage of those amounts that are not in dispute, unless and until the Court enters an order approving the requested compensation orexpenses.

6.2     <u>Preservation and Assignment of Causes of Action</u>:    As of the Effective Date, claims held by the Debtor or the Estate, whether arising under §§ 502, 506, 510, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552 or 553 of the Code, under non-bankruptcy law, or otherwise, relating to any dispute with secured creditors as

referenced on Exhibit 1, shall be deemed fully preserved and vested in the Postconfirmation Debtor. As of the Effective Date, claims held by the Debtor or the Estate, whether arising under §§ 502, 506, 510, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552 or 553 of the Code, under non-bankruptcy law, or otherwise, relating to (1) preference claims and avoidance claims, including preference claims referenced at paragraph 3(a) of the Debtor's Statement of Financial Affairs dated November 19, 2009 or as amended; (2) claims of any kind against Robert R. Rosenau, Robert E. Rosenau, and Donna Rosenau, or against affiliated entities or persons; or (3) claims relating to the RMD Services, LLC ("RMD") or its owner Ryan Nathan concerning management and collection of rent from the Debtor's Oakland properties, shall be deemed fully preserved and vested in the Committee, except to the extent that the Committee assigns such claims in writing to the postconfirmation Debtor. Confirmation of the Plan effects no settlement, compromise, waiver, or release of any cause of action unless the Plan or Confirmation Order so provides. The postconfirmation Debtor shall cooperate with and assist the Committee in the prosecution of any claims.

6.3    Transfer of Office Equipment to Robert Rosenau for $1,000. Prior to the conversion of the case from chapter 7 to chapter 11, Donna Rosenau paid chapter 7 trustee John Reger the sum of $1,000 for (1) office equipment, described on the Debtor's schedule B as 3 desks, 3 computers, 8 chairs, 3 printers, 1 combination printer/copier/fax machine, and valued at $800, and (2) inventory and supplies, valued at $200. Due in part to the conversion of the case, the transanction was not finalized. The chapter 7 trustee turned over the $1,000 in funds to the Debtor , who is now holding the funds. Upon the Effective Date, the postconfirmation Debtor shall transfer office equipment and supplies to Donna Rosenau.

6.4    Abandonment of Assets: The Postconfirmation Debtor hereby retains all assets of the Estate.

6.5    Closing of Case: At such point as the Court determines, upon noticed motion of the Postconfirmation Debtor or other party in interest, or otherwise, that all

pending Claims objections, contested matters and adversary proceedings have been resolved, or that the Case need not remain open despite pending objections, matters or proceedings, the Case may be closed by the terms of a final decree of the Court, provided that the Case will be reopened thereafter if necessary to facilitate any actions contemplated by the terms of the Plan. The fact that some or all of the distributions to Creditors remain to be made shall not, in and of itself, constitute grounds for keeping the Case open when the Postconfirmation Debtor or other party in interest requests that the Case be closed.

6.6    Certain Jurisdictional Limitations: Any party in interest who believes that the conduct of the Postconfirmation Debtor, or professionals engaged by the Postconfirmation Debtor, is not consistent with the provisions of this Plan or believes that any Claims exist against the Postconfirmation Debtor or professionals working for the Postconfirmation Debtor for any conduct taken within the scope of its/his/her duties as Postconfirmation Debtor or as such professional, all such Claims, rights, requests for relief, or enforcement of this Plan must be filed in and determined by the Bankruptcy Court having jurisdiction over the Case. No concurrent jurisdiction shall exist for the determination or enforcement of any such rights under or arising from this Plan, or Claims against the Postconfirmation Debtor or professionals retained by the Postconfirmation Debtor, in any other state, federal or foreign court.

6.7    Stay or Injunction in Aid of the Plan: Except as otherwise provided in this Plan and until the Case is closed and the Plan is completed, all parties are stayed and enjoined from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Interest against the Debtor, the Debtor in Possession, the Debtor's Estate, the Postconfirmation Debtor, or properties or interests in properties of the Debtor, the Debtor in Possession, the Debtor's Estate, or the Postconfirmation Debtor; (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor, the Debtor in Possession, the Debtor's Estate, or the Postconfirmation Debtor, or properties or interests in properties of the Debtor, the Debtor in Possession, the Debtor's Estate, or the Postconfirmation Debtor;

(c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the Debtor in Possession, the Debtor's Estate, or the Postconfirmation Debtor; and (d) except to the extent provided, permitted, or preserved by section 553 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of seoff, subrogation, or recoupment of any kind against any obligation due from the Debtor, the Debtor in Possession, the Debtor's Estate, or the Postconfirmation Debtor. Notwithstanding the foregoing, nothing in this Plan grants the Debtor a discharge.

6.8     Exemption from Transfer Taxes:   Pursuant to the provisions of Section 1146(c) of the Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, the sale or other transfer of any assets by the Postconfirmation Debtor to a third party, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, transfer, real estate transfer, mortgage recording, sales or other similar tax.

ARTICLE 7
PROCEDURES RELATING TO CLAIMS AND INTERESTS

7.1     Pre-Petition, Unsecured Claims Bar Date:   The deadline for filing pre-petition, unsecured Claims was established by the Court as May 13, 2010, for Creditors other than Governmental Units. For Governmental Units, the deadline was July 7, 2010.

7.2     Bar Date for Administrative Claims Incurred Before the Confirmation Date:  Holders of Administrative Claims arising before the Confirmation Date, including those allowable under Code section 503 but excluding post-confirmation Claims of Professionals, shall be forever barred from recovering from Debtor or the Estate on account of such Claim unless within forty-five (45) days of service of notice of entry of the Confirmation Order the holder of such Claim files with the Court a motion for allowance

of such Claim, including notice of the date and time for the hearing on the allowance of such Claim.

7.3 Allowance of $50,000 Vasilakis Administrative Claim. Gus Vasilakis shall hold an Allowed Administrative Claim in the amount of $50,000 pursuant to 11 U.S.C. § 503(b)(1)(A) and/or 503(b)(3)(D), as a result of his payment of that amount as a retainer to Fredrick Clement to allow the case to be converted to chapter 11.

7.4 Disputed Claims or Interests: The postconfirmation Debtor and the Committee shall retain the authority to make and file with the court any objections to Claims or Interests. In the case of disputed Claims or Interests and unless the Court orders otherwise for cause shown, reserves from each distribution shall be set aside for the holder of each disputed Claim or Interest in an amount equal to what each disputed Claim or Interest holder would have received had its Claim or Interest been allowed at the time of the distribution, unless otherwise ordered by the Court under section 502(c). When the dispute over the Claim or Interest is resolved, the funds reserved for the disputed Claim or Interest shall be paid if it is allowed and any funds reserved for the disputed Claim or Interest, if disallowed, shall be re-distributed to the holders of Allowed Claims or Interests of that class until paid in full.

7.5 Interim Distributions: Nothing in the Plan prohibits the Postconfirmation Debtor from seeking Court approval to make interim distributions to holders of Claims, provided that sufficient funds exist to continue the implementation of the Plan and to reserve for disputed Claims and all costs to be incurred in completing the liquidation of assets and other duties under the Plan.

7.6 Claims Under Code § 502(h): All Claims arising from judgments or settlements in an action by the Estate for recovery of money or property must be filed within thirty (30) days of the entry of such judgment or date of such settlement as required by Rule 3002(c)(3) or will forever be barred and disallowed.

7.7 Unclaimed Distributions and Claim Waiver: The Postconfirmation Debtor may draw checks constituting payments due under this Plan so that such checks

will automatically become void if not presented to the payor bank for payment within 90 days after the date of the check. Unless the Court for cause otherwise directs, if any such check is properly mailed to the payee's last known address within twenty (20) days after its date, and thereafter becomes void, the Claim with respect to which the check was issued shall be deemed withdrawn and disallowed, and the holder shall be barred from seeking further recovery on account of that Claim or Interest, and the unclaimed distribution shall become available for distribution to known holders of Allowed. <u>Provided</u>, however, if the Postconfirmation Debtor later determines, in its sole discretion, that it is not economically prudent to redistribute such unclaimed or returned funds, such funds shall be considered and treated as unclaimed property under Code section 347(a).

      7.8   <u>DeMinimis Distributions</u>: Notwithstanding anything to the contrary in this Plan, the Postconfirmation Debtor is not required to deliver a payment to the holder of an Allowed Claim or Interest if the amount of cash due is less than $25.00. The Postconfirmation Debtor may round all amounts for distribution to the nearest whole dollar.

ARTICLE 8
EXECUTORY CONTRACTS AND LEASES

      8.1   Except as otherwise provided in this Plan or other order of the Court prior to Confirmation, all executory contracts and unexpired leases of the Debtor entered into prior to the Petition Date which are not assumed or rejected pursuant to Code section 365 prior to the Confirmation Date shall be deemed rejected upon the Effective Date. Each non-debtor party to an executory contract or unexpired lease rejected h ereunder shall have thirty (30) days subsequent to the Effective Date to file a proof of Claim with the Court asserting damages arising from such rejection.

Upon the Effective Date, the following contracts, to the extent not fully performed prior to the Effective Date, and as such contracts are further described on the Debtor's Schedule G, shall be assumed: (1) Steve Rizzo (Employment agreement – Steve Rizzo,

General Manager, Pepper Tree Inn-includes $10,000 bonus on sale of hotel); (2) Blue Gardner (landscape maintenance for the Pepper Tree Inn); (3) Eco Lab (Pest Control for Pepper Tree Inn); (4) Inn Quest (Room reservation system); (5) Hypapa Strebbe (Swimming Pool Contract); (6) Verizon California (Telephone and cable television service); (7) Heartland Leasing Services (Telephone systems for Pepper Tree Inn).

Upon the Effective Date, the following contracts, to the extent not fully performed prior to the Effective Date, and as such contracts are further described on the Debtor's Schedule G, shall be rejected: (1) George and Maxine Theobold (Lease of office space, located at 3404 Bechelli Lane, Suite C, Redding, California 96002); (2) Jeanette Guidici (Listing agreement for 17105 Marinas Way, Cottonwood, California); (3) Steve Pagones (Possible listing agreement for 1254 98th Street, Oakland, California; Possible listing agreement for 7832 Ney Avenue, Oakland, California; Possible listing agreement for 886 McElroy, Oakland, California); (4) RMD Services I, LLC (Property Management Agreement for 1784-1786 9th Street, 1620 17th Street, 886 McElroy, 1254 98th Avenue, 9429 Peach Street, and 7832 Ney Avenue (all located in Oakland); Sale contract for 7832 Ney Avenue, Oakland, California; Sale contract for 886 McElroy Street, Oakland, California; (5) Eula Johnson (Sale contract for 1254 98th Avenue, Oakland, California).

ARTICLE 9
EFFECT OF CONFIRMATION

9.1    Revesting:    As of the Effective Date, and except as otherwise provided in the Plan, all property and rights of the Estate shall be revested in the Postconfirmation Debtor.

9.2    Committee Continuation:    On and after the Effective Date, the Committee shall continue in existence and operate under its current by-laws with all powers and duties as set forth in the Bankruptcy Code, unless otherwise ordered by the Court upon noticed motion by any party in interest. So long as the Committee is in existence, the Debtor or the Postconfirmation Debtor, as the case may be, shall use all reasonable efforts to keep the Committee informed of the status of the Case.

## ARTICLE 10
## MODIFICATION OF PLAN

10.1    Pre-Confirmation Modification:    The Proponent may propose amendments or modifications of this Plan at any time prior to the Confirmation Date consistent with Code section 1127 and Rule 3019.

10.2    Post-Confirmation Modification With No Materially Adverse Effect: After the Confirmation Date, the Postconfirmation Debtor may, with approval of the Court but without further notice and so long as it does not materially, adversely affect the interest of Creditors or Interest holders, modify this Plan or remedy any defect or omission or reconcile any inconsistency in the Plan in such a manner as may be necessary to carry out the purpose and intent of this Plan.

10.3    Post-Confirmation Material Modification: This Plan may be modified at any time after confirmation and before substantial consummation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Code, and the Court, after notice and a hearing, confirms such Plan, as modified, under section 1129 of the Code, and the circumstances warrant such modification.

## ARTICLE 11
## RETENTION OF JURISDICTION

11.1    Retention of Jurisdiction:    Until the Case has been closed, and thereafter upon a motion to reopen the Case, the Court shall have exclusive jurisdiction of all matters concerning the allowance of Claims and Interests, and the interpretation and implementation of the Plan, pursuant to, and for all purposes of, sections 105(a) and 1142 of the Code, including without limitation the following purposes:

(a)    to determine any and all Claims, causes of action, adversary proceedings, applications and contested matters which are pending on the Effective Date or which are thereafter commenced by or related to the Estate;

(b)    to hear and determine any objection to, or requests for estimation of, Administrative Expense Claims, Claims, or Interests;

(c)     to enter and implement such orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(d)     to issue such orders in aid of execution of the Plan, to the extent authorized by the provisions of section 1142 of the Code;

(e)     to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order;

(f)     to hear and determine all applications for Professional Fees accrued through the Effective Date;

(g)     to hear and approve any motions to approve sales free and clear of liens post-confirmation, to the extent such approval is required under this Plan;

(h)     to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan; to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Code; and

(i)     to enter a final decree closing the Case, and orders reopening the Case as appropriate.

**Signatures on Following Page**

**PROPONENT:**

Dated:  August 5, 2010       Rosenau Investments, Inc.

By _____
    Robert Rosenau, President

APPROVED AS TO FORM

By _____
Fredrick Clement
Attorneys for Rosenau Investments, Inc.

**Exhibit 1** to Debtor's Plan of Reorganization Dated August 5, 2010:

**Classes and Treatment of Secured Creditors**

| Secured Creditors Class No. | Name and Address of Creditor | Description of Lien Claim; Treatment Unless otherwise stated, the treatment is as follows: To the extent not otherwise satisfied prior to the Effective Date of the Plan, the Allowed Secured Claim in each class shall be paid or otherwise satisfied in full by the Debtor from the sale proceeds of the collateral securing the obligation. Any deficiency shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Real Property Debtor either owns the real property, or owns a promissory note which is secured by a deed of trust against the real property described below. |
|---|---|---|---|
| 2.2.1 | City Of Oakland, Community & Economic Dev. Agency 250 Frank H. Ogawa Plaza, Room 2340 Oakland. CA 94812 | Disputed 2009 Invoice for Code Violations | 7832 Ney Ave. Oakland, CA |
| 2.2.2 | City Of Oakland CEDA Building Services 250 Frank H. Ogawa Pl., Rm 2340 Oakland, CA 94612 | Disputed Priority Lien and Special Assessment | 7832 Ney Avenue Oakland, CA |
| 2.2.3 | City of Oakland Mandatory Garbage Section 150 Frank H. Ogawa Pl., Suite 5342 Oakland, AC 94612 | Disputed 2009 Delinquent Refuse Service | 1250 98th Avenue |

**Exhibit 1** to Debtor's Plan of Reorganization Dated August 5, 2010:

**Classes and Treatment of Secured Creditors**

| 2.2.4 | City of Oakland Mandatory Garbage Section 150 Frank H. Ogawa Plz, Suite 5342 Oakland, CA 94612 | Disputed 2009 Refuse Lien | 9425 Peach Street |
|---|---|---|---|
| 2.2.5 | City of Oakland CEDA Building Services 250 Frank H. Ogawa Pl., Rm 2340 Oakland, CA 94612 | Disputed 2009 Abatement Action | 946 61st Street, Oakland |
| 2.2.6 | City of Oakland CEDA Building Services 250 Frank H. Ogawa Pl., Rm 2340 Oakland, CA 94612 | Disputed 2009 Refuse Lien | 1620 17th Street |
| 2.2.7 | City of Oakland Mandatory Garbage Section 150 Frank Ogawa Pl., Rm 2340 Oakland, Ca 94612 | Disputed 2009 Refuse Lien | 9425 Peach Street, Oakland |
| 2.2.8 | City of Oakland CEDA Building Services 250 Frank H. Ogawa Pl., Rm 2340 Oakland, CA 94612 | Disputed 200 Priority Lien | 946 61st Street, Oakland |

**Exhibit 1** to Debtor's Plan of Reorganization Dated August 5, 2010:

Classes and Treatment of Secured Creditors

| | | | |
|---|---|---|---|
| 2.2.9 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Abatement Proceeding | 946 61st Street, Oakland |
| 2.2.10 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2007 Prospective Lien and Special Assessment | 946 61st Street |
| 2.2.11 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2007 Priority Lien and Special Assessment | 946 61st Street |
| 2.2.12 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2006 Priority Lien and Special Assessment | 946 61st Street |
| 2.2.13 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2006 Priority Lien and Special Assessment | 946 61st Street |
| 2.2.14 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 946 61st Street |
| 2.2.15 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 1620 17th Street |

**Exhibit 1** to Debtor's Plan of Reorganization Dated August 5, 2010:

**Classes and Treatment of Secured Creditors**

| | | | |
|---|---|---|---|
| 2.2.16 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 1620 17th Street |
| 2.2.17 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 1620 17th Street |
| 2.2.18 | City of Oakland<br>Mandatory Garbage Section<br>150 Frank H. Ogawa Pl., Suite 5342<br>Oakland, CA 94612 | Disputed 2009 Refuse Lien | 1620 17th Street |
| 2.2.19 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 1620 17th Street |
| 2.2.20 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 7832 Ney Avenue |
| 2.2.21 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 886 McElroy |
| 2.2.22 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien and Special Assessment | 886 McElroy |

**Exhibit 1 to Debtor's Plan of Reorganization Dated August 5, 2010:**

**Classes and Treatment of Secured Creditors**

| | | | |
|---|---|---|---|
| 2.2.23 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Refuse Lien | 1250 98th Avenue |
| 2.2.24 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Priority Lien | 1427 Willow Street |
| 2.2.25 | City of Oakland<br>CEDA Building Services<br>250 Frank H. Ogawa Pl., Rm 2340<br>Oakland, CA 94612 | Disputed 2009 Prospective Lien and Special Assessment | 1427 Willow Street |
| 2.2.26 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount: $5,770.45  2009 Property Tax | 1254 98th Avenue, Oakland, CA |
| 2.2.27 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount: $6,159.36 2009 Property Tax | 886 McElroy Street, Oakland, CA |
| 2.2.28 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount: $3,138.11  2008/2009 Ad Valorem Real Property Taxes | 1620 17th Street, Oakland, CA |
| 2.2.29 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount: $2.415.19  2008/2009 Ad Valorem Real Property Taxes | 1784 19th Street, Oakland , CA |

**Exhibit 1** to Debtor's Plan of Reorganization Dated August 5, 2010:

**Classes and Treatment of Secured Creditors**

| | | | |
|---|---|---|---|
| 2.2.30 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount:<br>$2,602.29 2008/2009 Ad<br>Valorem Real Property<br>Taxes | 946 61st Street,<br>Oakland, CA |
| 2.2.31 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount:<br>$10,076.84 2008/2009 Ad<br>Valorem Real Property<br>Taxes | |
| 2.2.32 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount:<br>$24,308.71 Unknown Ad<br>Valorem Real Property<br>Taxes | Ney Avenue |
| 2.2.34 | County of Alameda<br>Office of the Assessor<br>1221 Oak Street, Room 145<br>Oakland, CA 94612- 4288 | Scheduled Amount:<br>$1,565.40 2008/2009 Ad<br>Valorem Real Property<br>Taxes | Willow Street,<br>Oakland |
| 2.2.35 | Gus Vasilakis & Kathleen<br>Valilakis<br>1985 Revocable Living Trust<br>7420 Danish Lane<br>Redding, CA 96002 | Scheduled Amount:<br>$148, 676.28<br>Deed of Trust | 9th Street, Oakland<br>CA |
| 2.2.36 | James T. Hull, Sr.<br>4617 Underwood Blvd.<br>Redding, CA 96003 | Scheduled Amount:<br>$57,000.00 2008 Remodel<br>Deed of Trust | 17105 Marianas<br>Way, Cottonwood,<br>CA |
| 2.2.37 | Leanne F. Weber<br>2530 Templeton Drive<br>Redding, Ca 96002 | Disputed 6/9/03<br>Temporary Protective<br>Order September 14, 2009<br>CCP 486.110;<br>Lien is **terminated**<br>pursuant to CCP §<br>493.030(b); Claim shall be<br>paid Pro Rata from the<br>same source as the | 9th Street, Oakland<br>CA |

|  |  | payments on Class 3B Claims. |  |
|---|---|---|---|
| 2.2.38 | Leanne F. Weber 2530 Templeton Drive Redding, Ca 96002 | Disputed 12/9/03 Temporary Protective Order September 14, 2009 CCP 486.110. Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Pepper Tree Inn |
| 2.2.39 | Leanne F. Weber 2530 Templeton Drive Redding, Ca 96002 | Disputed 1/21/04 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 1427 Willow Street, Oakland CA |
| 2.2.40 | Leanne F. Weber 2530 Templeton Drive Redding, Ca 96002 | Disputed 6/1/07 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Buckeye Pines, Redding, CA |
| 2.2.41 | Leanne F. Weber 2530 Templeton Drive Redding, Ca 96002 | Disputed 6/1/07 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim | 4550 & 4580 Cedars Road, Redding, CA |

|  |  |  |  |
|---|---|---|---|
|  |  | shall be paid Pro Rata from the same source as the payments on Class 3B Claims. |  |
| 2.2.42 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 6/3/03 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 1784 9th Street Oakland, CA |
| 2.2.43 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 7/7/05 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Oakdale Avenue Lots, Oakland, CA |
| 2.2.44 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed Date Unknown Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 1427 Willow Street, Oakland, CA |
| 2.2.45 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 2/1/06 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B | Pepper Tree Inn |

|  |  |  |  |
|---|---|---|---|
|  |  | Claims. |  |
| 2.2.46 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 3/16/06; Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 772-774 Lake Blvd, Redding, CA |
| 2.2.47 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed Date Unknown Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 886 McElroy Street, Oakland, CA |
| 2.2.48 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 2/1/08 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 17105 Marianas Way, Cottonwood, CA |

**Exhibit 1** to Debtor's Plan of Reorganization Dated August 5, 2010:

**Classes and Treatment of Secured Creditors**

| | | | |
|---|---|---|---|
| 2.2.49 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 12/1/06 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Oakdale Avenue Lots, Oakland, CA |
| 2.2.50 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 4/17/07 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 9425 Peach Street, Oakland, CA |
| 2.2.51 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 7/18/07 Temporary Protective Order September 14, 2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 7832 Ney Avenue, Oakland, CA |
| 2.2.52 | Melvin & Virginia Hendrickson 1992 Revocable Living Trust 2679 Pacific Avenue Redding, CA 96002 | Disputed 7/23/07 Temporary Protective Order September 14,2009 CCP 486.110; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Buckeye Pines, Redding, CA |

**Exhibit 1** to Debtor's Plan of Reorganization Dated August 5, 2010:

**Classes and Treatment of Secured Creditors**

| | | | |
|---|---|---|---|
| 2.2.53 | Nicodemus Family 2006 Trust Rex & Jill Nicodemus, Trustees 855 Boulder Lane Lincoln, CA 95648 | Disputed 7/12/04 TPO Writ of Attachment; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Buckeye Pines, Redding, CA |
| 2.2.54 | Nicodemus Family 2006 Trust Rex & Jill Nicodemus, Trustees 855 Boulder Lane Lincoln, CA 95648 | Disputed 10/12/04 TPO Writ of Attachment; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 946- 61st Street, Oakland, CA |
| 2.2.55 | Nicodemus Family 2006 Trust Rex & Jill Nicodemus, Trustees 855 Boulder Lane Lincoln, CA 95648 | Disputed 6/1/07 TPO Writ of Attach. Lien is subject of litigation (Shasta County Superior Court Case No. 166108. To the extent not otherwise satisfied prior to the Effective Date of the Plan, to the extent that the lien of this class is Allowed it shall be paid or otherwise satisfied in full by the Debtor from the sale proceeds of the collateral securing the obligation. Any deficiency shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | Promissory Note Secured by 4550 & 4580 Cedars Road, Redding, Ca |
| 2.2.56 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |

**Exhibit 1 to Debtor's Plan of Reorganization Dated August 5, 2010:**

**Classes and Treatment of Secured Creditors**

| | | | |
|---|---|---|---|
| 2.2.57 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |
| 2.2.58 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |
| 2.2.59 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |
| 2.2.60 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |
| 2.2.61 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |
| 2.2.62 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,201.58 2008-2009 Property Taxes | Buckeye Pines Subdivision |
| 2.2.63 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,201.58 2008-2009 Property Taxes | Buckeye Pines Subdivision |

**Exhibit 1 to Debtor's Plan of Reorganization Dated August 5, 2010:**

**Classes and Treatment of Secured Creditors**

| 2.2.64 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,201.58 2008-2009 Property Taxes | Buckeye Pines Subdivision |
|---|---|---|---|
| 2.2.65 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |
| 2.2.66 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $2,809.13 2008-2009 Property Taxes | Buckeye Pines Subdivision |
| 2.2.67 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |
| 2.2.68 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |
| 2.2.69 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |
| 2.2.70 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |

**Exhibit 1** to Debtor's Plan of Reorganization Dated August 5, 2010:

**Classes and Treatment of Secured Creditors**

| 2.2.71 | Shasta County Tax Collector P.O. Box 991830 Redding, CA 96099-1830 | Scheduled Amount: $1,189.06 2008-2009 Property Taxes | Buckeye Pines Subdivision |
|---|---|---|---|
| 2.2.72 | Weber Family Trust William Weber & Leanne Weber, Trustees 2530 Templeton Drive Redding, CA 96002 | Disputed 3/29/07 TPO Writ of Attachment; Lien is **terminated** pursuant to CCP § 493.030(b); Claim shall be paid Pro Rata from the same source as the payments on Class 3B Claims. | 6016 Alisal Street, Pleasanton, CA |
| 2.2.73 | Other Secured Claims. This Class consists of any other Secured Claims against the Debtor other than those in Classes 2.1 to 2.72 | Any other Secured Claims other than those in Classes 2.2.1 through 2.2.72 shall retain their liens securing the Claims and shall receive deferred cash payments totaling at least the allowed amount of their Claims, of a value, as of the Effective Date of the Plan, of at least the value of each claimant's interest in the collateral as required under section 1129(b)(2) of the Code; provided however, that the Proponents reserve the right to require each claimant to remove, at its own cost and peril and without damage to any property of the Estate, and at a time mutually convenient to such holder and the Debtor, such property as to which such holder holds a perfected security interest. Such holder may file and assert a Claim within Class 3A | Not determined |

**Exhibit 1** to Debtor's Plan of Reorganization Dated August 5, 2010:

**Classes and Treatment of Secured Creditors**

| | | | |
|---|---|---|---|
| | | or 3B for any deficiency resulting from such abandonment and return of collateral, provided that a proof of claim therefor is filed with the Court and served upon the Debtor within thirty (30) days following the Effective Date.  The Debtor does not believe there are any holders of Class 2.73 Secured Claims | |